COATES
v.
CHEEVER.

---

COATES, Widow, appellant, *against* CHEEVER, respondent.

Proceedings before the surrogate to admeasure and lay off dower.

Surrogate's order for the admeasurement of dower, pursuant to the act (*Sess.* 10, *ch.* 168. 1 *R. L.* 60.)

Recites petition to the surrogate

ESSEX COUNTY, *Surrogate's Office*, ss.    To *Thomas Stower* and *George Throop*, of the town of *Willsboro'*, and *Ransom Noble*, of the town of *Essex*, in the county of *Essex* : Whereas *Maria Coates*, widow of *John Coates*, late of *Boston*, in the state of *Massachusetts*, deceased, has, by her petition filed in this office, set forth, that she was lawfully married to the said *J. C.* in his life time, and that he, the said *J. C.* her said husband, died on the 15*th* day of *July*, A. D. 1819, and that the said *J. C.* her said husband, after her intermarriage with him as aforesaid, and before his death, was seized in his *demesne* as of fee, of a certain tract of land, situate, lying and being in the town of *West-Port*, in the said county of *Essex*, commonly called *Rogers' ore bed Patent*, on the west side of Lake *Champlain*, and described as follows, to wit : Beginning, &c. [*describing the land by metes and bounds*,] containing 430 acres of land, (except 130 acres now or late in the possession of *John Walton*) together with all the *iron ore*, privileges and appurtenances, thereunto belonging, or in any wise appertaining ; and that she hath never had her dower in the aforesaid lands ; and further that *Abijah Cheever*, now, or late of *Boston*, or *Thomas Walton*, was, at the time of the filing of the said petition, in the possession of the aforesaid lands, with their appurtenances ; and whereas the said *Maria*, in her said petition, did pray the Surrogate of the county of *Essex*, to issue an order to three disinterested freeholders of the said county of *Essex*, to be by him appointed, to admeasure and lay off, as speedily as might be, one third part of the land mentioned and

described as aforesaid, as her dower in the said lands ; and whereas, by order of the said Surrogate, the said *A. C. &amp; T. W.* were required to appear before the said Surrogate, at his office, in *Elizabethtown*, in the county aforesaid, on the 6*th* day of *June*, A. D. 1820, at one o'clock in the afternoon of that day, to shew cause, if any they had, why admeasurers of dower should not be appointed, according to the prayer of the said petition ; and whereas, at the time and place in the said order specified, before me, *Ashley Pond*, Surrogate of the county of *Essex* aforesaid, came as well the said *Maria*, by *Dean Edson*, her attorney duly authorized, as the said *Abijah* and *Thomas*, in their own proper persons ; and whereas no sufficient cause has been shewn, why admeasurers of dower should not be appointed, according to the prayer of the said petition ; now, therefore, I, the said Surrogate, do hereby order you, the said *T. S.*, *G. T. &amp; R. N.* to admeasure and lay off as speedily as may be, *one third part* of the said lands described in the said petition, as the said widow's dower, according to the statute in such case made and provided. In testimony whereof, I have hereunto set my hand, and affixed the seal of my office, at *Elizabethtown*, this 10*th* day of *June*, A. D. 1820.

A. P. (L. S.)

State of *New-York*, *Essex County*, ss. We, *T. S.*, *R. N. &amp; G. T.* appointed admeasurers of the dower of *M. C.* do swear that we will faithfully and honestly execute the trust herein reposed in us respectively.

*T. S.*

*Sworn, &c.* *R. N.*

*G. T.*

To the Surrogate of the county of *Essex* : We, *Ransom Noble*, *Thomas Stower*, and *George Throop*, the undersigned, appointed by the prefixed order, to admeasure and set off to *Maria Coates*, the widow of *John Coates*, deceased, one third part of the tract of land in the said order mentioned, and of which the said *J. C.* in his life time was seized, do make the following report of our proceedings in the execution of the trust committed to us : On the 5*th* day of *July*, A. D. 1821,

*Margin notes:*

ALBANY, October, 1823.

COATES v. CHEEVER.

and order that the tenants appear and shew cause, &c.

Who appear, but shew no sufficient cause.

Oath of admeasurers.

Their return, or report.

ALBANY,
October, 1823.

COATES
v.
CHEEVER.

having been severally sworn by the competent authority, faithfully and honestly to execute the trust reposed in us, we proceeded to the tract of land aforementioned, and carefully viewing the same, with the several buildings and erections thereon, did admeasure and allot to the aforesaid widow, the following piece or parcel of land, with the appurtenances, included in the bounds of the aforesaid tract, of which the said *J. C.* was, in his life time, seized, being in our opinion, *one sixth part of the lands ordered for admeasurement, considered as well with reference to the value as the quality of the said lands,* with the appurtenances, the counsel for the said widow having abandoned all claim to more than a *sixth* of the said lands mentioned in the said order, which said lands, with their appurtenances, admeasured by us, and set off as the widow's dower as aforesaid, are described as follows, that is to say, " Beginning, &c. [*by metes and bounds*] also that part of the dwelling house on the said premises, described as follows, to wit: All the rooms and chambers in the upright part of the said house, on the west side of the hall or entry, and the land the same stands on, and also the cellar under the west part of the said house, and also the pantry or buttery on the north side of the same, and also the west equal half of the stairs in the hall from the first to the second floor, and also the garret or upper room, or rooms, or place for them, over the said west part of the said house ; and also so much of the entry or hall on the first floor at the foot of the said stairs, as is contained in the width of the two floor boards, on the west side of the said entry, next and opposite to the door leading into the west room, and also all of the said entry, or hall south of the said door leading into the said west room. In witness, &c. this 13*th* day of *July*, A. D. 1822.

$$T. \ S. \quad (\text{L. S.})$$
$$G. \ T. \quad (\text{L. S.})$$
$$R. \ N. \quad (\text{L. S.})$$

Dower is due of iron, or other mines wrought during the coverture ; but not

*Stower*, one of the admeasurers, in an affidavit the *jurat* whereof was dated *Oct.* 14*th*, 1822, stated, that on the lands mentioned in the order for admeasurement, there is situate a very valuable and rich *iron ore bed*, which was opened and

worked before, and in the life time of *John Coates*, and
while he was *owner of the lands*; that this was proved,
and admitted before the admeasurers, by the counsel of
*Cheever*; that this *iron ore bed* constitutes the principal val-
ue of the lands, is quite productive, and that the land is
poor and of very little value in comparison with the value

of mines un-
opened at the
death of the
husband.

If land assigned for dower contain an open mine, tenant in dower may work it for her own benefit.

Dower may be assigned of mines, either collectively with other lands, or separately of themselves.

It shall be assigned by metes and bounds, if practicable ; if not, a proportion of the prof-its, or the separate alternate enjoyment of the whole for short proportionate periods, may be assigned for dower.

Where the assignment is of lands *aliened* by the husband in his life time, and improved by the tenant, the admeasurers should assign one third of the whole value of the land, de-ducting the improvements made ince the sale ; and the assignment should be so made, if practicable, as to give the tenant possession of the improvements which he has made ; or, if made in any other way, it should always be in such manner as to secure to him under the statuie, (*sess*. 29 *ch*. 168, *s*. 1, 1 *R. L*. 60,) his own improvements, or a suitable al-lowance for the use of them

In proceedings to assign dower before the surrogate, the admeasurers appointed by him under the above mentioned statute, have no power to decide upon the widow's right in the land : but this is a question which belongs to the surrogate, and the admeasurers must obey his order.

Where the surrogate orders one third of certain premises to be set off, the admeas-urers have no right to confine their admeasurement to one sixth, upon the ground that the husband was entitled only to one undivided half of the land.

But they have the same powers as a sheriff under an execution upon a *judgment* in dower ; and, accordingly, are not confined to the mere measuring off by metes and bounds, but may assign dower in mines as above mentioned ; and a surrogate's court is, under the statute, a legal and fit tribunal for directing and enforcing such an assignment.

A widow is, in general, entitled to dower in an equity of redemption ; but where the tenant enters upon the land by virtue of a foreclosure, or after a forfeiture for the non-payment of the money, then the estate is deemed never to have vested in the husband, and the widow is not entitled to dower.

Where the tenant in possession enters by virtue of a purchase of the equity of redemp-tion from the mortgagor, and then buys the mortgage, and takes an assignment to himself, this extinguishes the mortgage, and the widow of the mortgagor is entitled to her dower, and in such case her right relates back to the purchase of her husband.

Where A bought land of B, and gave him a mortgage for the purchase money ; then conveyed the equity of redemption to C, then C entered and bought the mortgage of B, *held*, that A's widow was entitled to dower, and that the mortgage was extinguished by the union of the legal and equitable estate in C.

On appeal from the proceedings to assign dower before the surrogate, where the respon-dent resides out of the state, it seems the notice of the appeal and other papers may be serv-ed by putting them in the post office, directed to the respondent, or by delivering them to his tenant upon the premises, or upon his attorney, in fact, if he has any ; but service up-on the attorney who appeared for him, and conducted his proceedings before the surro-gate, is not *per se*, sufficient notice ; for attornies are not known as officers of that court, and the person appearing as attorney there, is not considered as an attorney on record, up-on whom notices may be served, in the progress of a suit, prosecuted or defended by attorney.

Where the notice of appeal and other papers were served upon the agent and counsel of the respondent, who appeared for him before the surrogate and the admeasurers, and who was directed by him to keep a look out, and it appeared that the respondent was, in fact, apprized of the service, and retained counsel, who appeared and brought his whole case before the court ; *held*, that these circumstances were equivalent to a personal service.

The statute directs no particular manner of service, and it is satisfied, if the court see that the party has been fully apprized of the appeal, so that his rights cannot be affected for want of notice.

of the ore bed ; that *Cheever's* counsel contended before the admeasurers, that the widow could not lawfully be endowed of any part of the ore bed, because she could not use the same without being liable for waste, and that, therefore, the admeasurers set off her dower without considering the increased value of the lands by means of the ore bed, but made apportionment of the lands, as though no iron ore had been there ; that if the widow was entitled, in law, to be endowed of a portion of the ore bed, the admeasurers set off but a small proportion of what is and was her just and reasonable dower ; that her general right to dower in the lands was admitted by *Cheever* before the admeasurers. *Throop* and *Noble*, the other two admeasurers, made affidavits to the same effect, the *jurat* of one being dated the same day, and the other, the 16*th Oct.* 1822.

Notice of the motion to set the admeasurement -aside, &c.

The notice of the motion to be founded on the above papers, was signed by *Dean Edson*, as attorney for *M. Coates*, the appellant, and directed to *Hascall & Ross*, as attornies for the respondent, *Cheever*, with copies of the papers, giving them notice that, on reading those papers, he should bring on the argument of appeal, and that this Court would be moved, at, &c. on, &c. that the admeasurement, &c. be set aside for irregularity and insufficiency in the assignment, &c. and that the assignment, &c. be held for nothing, and that the admeasurers do proceed to lay off and assign to the widow, &c. her reasonable dower, &c, according to law.

Appeal.

Attached to the same papers, was a declaration in writing, signed by *Dean Edson*, as attorney of the appellant, and dated *August* 12*th*, 1822, stating that *Maria Coates*, thereby appealed for relief in the premises to the next Supreme Court of Judicature, to be held for the state of *New-York*, from the admeasurement, &c. and assigning for cause, the omission to assign her dower, according to her legal rights, and particularly in not allowing her a participation in the *ore bed*, and the profits thereof.

Copies of all the appellant's papers, with the notice of the motion, were served on Mr. *Hascall*, the partner of *Henry H. Ross*, the latter of whom acted as counsel for *Cheever* before the Surrogate and admeasurers. *Cheever* himself resided in *Boston*, and had a tenant, *Walton*, (named in the order and served with the original papers) resident upon the premises. It was testified by Mr. *Ross*, that *Cheever* never gave him any special power of agency or as attorney to act in this matter, other than a general request to keep a look out; nor had *Cheever*, according to his knowledge or belief, ever given any authority beyond this to his late partner, *Hascall*. It also appeared that *Cheever* had been apprized at a very early stage of this proceeding, that an appeal had been brought in this matter, and that he had retained counsel to defend the same.

It further appeared by Mr. *Ross*' affidavit, that *one sixth* only of the premises was claimed, on his suggesting to the admeasurers and the opposite counsel, that the husband of *Maria Coates* was the legal owner of only *one undivided half* of the premises.

It appeared further, by the affidavit of Mr. *Ross* and others, that a part of the vein of ore then open and worked, was not so opened and worked in the life time of the husband, but that the same was opened by *Walton*, the tenant of *Cheever*, and at *C's* expense and cost; that the opening, securing and draining it, since the husband's death, had cost above $2000, including other improvements for the convenience of digging and vending ore; that those parts opened by *Coates* were abandoned and had not been used or worked for about six years, and were filled with earth, water and stones. Witnesses were examined before the admeasurers, after several adjournments, by whose testimony, and a view of the premises, it appeared, that the premises consisted of a cultivated farm, a house, a barn and other out-houses, a wharf and a vein of iron-ore, extending in length about 60 rods; that the vein of ore had been opened and worked in several places; that it had been

worked down, in some places, as low as it could be work-
ed without draining, and that some other places were ob-
structed by earth and some by rocks ; and that since the
premises had been conveyed by *Coates* to the present pro-
prietors, they had laid out a considerable sum in repair-
ing the east end of the house ; that they had built a new
wharf, and opened the ore bed in a new place, which
they had uncapped and sided with timber, and had made
a drain for the same, the expense of all which was esti-
mated at upwards of $2000 ; that the expenses of open-
ing, draining and timbering the ore bed and making a
road, and building a wharf for the convenience thereof,
was about three fourths of the whole expense ; that af-
ter about 6 years use of the ore bed, it would be necessary
to sink a new drain, which a witness was of opinion would
cost about $2000, if made as it ought to be, for permanent
use ; that the difficulty and expense of digging the ore in-
creased with the quantity taken out, both by reason of the
height to which the ore must be raised, and also of the
great difficulty and expense incurred in keeping the works
free from water, in as much as the length of the drain was
greatly increased with its depth, and the bottom is a rock ;
that permitting Mrs. *Coates* to raise ore from the newly
opened vein, would greatly interrupt and discommode the
present occupant.

*Coates* had purchased *one half* of these premises
of one *Harmon*, to whom he had, at the time of the pur-
chase, executed a mortgage for the consideration mon-
ey ; which mortgage had been assigned to the respon-
dent, who purchased the premises of *Coates*, during his
life time, and took a conveyance thereof in fee.    The
circumstances attending the conveyances and mortgage,
are particularly detailed in the opinion of the *Chief Justice.*

*Z. R. Shipherd,* for the appellant, moved that the re-
port of the admeasurers be set aside, on the grounds speci-
fied in the appeal, viz. the omission to assign the appel-
lant her dower according to her legal rights, and particular-

ly, not allowing her a participation in the ore bed and the profits thereof. He said this mine was opened during the husband's life time ; and whatever doubts may formerly have been entertained on this subject, they are put at rest by the case of *Stoughton* v. *Leigh.*(a) This case decides that the widow is dowable of all those mines of lead and coal which have, in fact, been opened during the husband's life time and in which he had an estate of inheritance. This bed of ore, is a part of the lands whereof the husband was seised, within the meaning of the act concerning dower.(b) It is so at the common law. *Blackstone* says, that "whatever is in a direct line between the surface of any land and the centre of the earth belongs to the owner of the surface, as is every day's experience in the mining countries."(c) The wife is entitled to dower of all profits of land in which the husband was seised of an estate of inheritance.(d) Many things of a less permanent and substantial nature than mines are subject to dower. Springs of water, in *Rex* v. *Miller*,(e) were held to be profits of land. So dower is due of tolls arising from a publick navigable river.(f) If a man let lands with liberty of digging, his wife shall not, therefore, be the less endowed of them. Many of the cases put by Ld. *Coke*,(g) are of things not partaking so much of real property as mines. One instance there given is of a mill, whereof a woman shall not be endowed by metes and bounds nor in common with the heir, but either she may be endowed of the *third* toll dish, or *de integro molendino per quemlibet tertium mensem.* The remainderman for life, in an estate tail, may continue to work all coal mines which were lawfully opened by the tenant in tail.(h) In *Hoby* v. *Hoby*,(i) it was not disputed that the demandant was entitled to dower in a coal mine. He also referred to *Rol. Ab.* 675, *Dower* (D), *Bac. Ab. Dower* (B), *Co. Lit.* 55 b. 4 *Woodf. L. & T.* 55.

The circumstance, of improvements having been made since the death of the husband, cannot effect the claim. Such a rule would place the widow completely in the power of the tenant, who might bar her dower by improving to

ALBANY,
October, 1823.

COATES
v.
CHEEVER.

(a) 1 *Taunt.* 402.

(b) *Sess.* 10, ch. 4, s. 1, 1 *R. L.* 56.

(c) 2 *Bl. Com.* 18.
(d) *F. N. B.* 148.

(e) *Cowp.* 619.

(f) *Buck-eridge* v *Ingram,* 2 *Ves. Jun.* 652.
(g) 1 *Inst.* 32, a.

(h) *Clavering* v. *Clavering,* 2 *Peer Wms.* 388.
(i) 1 *Vern.* 218.

ALBANY,
October, 1823.

COATES
v
CHEEVER.

the full alue of the land. The law will not subject her to more disadvantageous terms than a tenant in common, who is liable to pay his share for improvements, but his title cannot thereby be taken away or affected in the least.

S. A. Foot, for the respondent, objected, 1. That the service of the papers was not sufficient: He said the 10th section of the act,( j ) under which this proceeding before the Surrogate was instituted, requires the appellant to give notice in writing of the causes of complaint, within 30 days after filing the report. But the act is silent, as to the persons to whom this notice shall be given and the manner of service. Here has been a tenant of the freehold for several years before the application and a tenant under him, neither of whom were served. *Hascall & Ross* cannot be considered, for the purpose of this service, either as attornies, solicitors or proctors ; for no such officers are legally recognized as existing in the Surrogate's Court. They are mere private counsel or advisers. It does not appear by the recital in the order, that they were acknowledged as such before the Surrogate in this cause. The tenants are mentioned as appearing in person. The proceedings in dower are usually conducted against the tenant in possession. The notice of this application is in the nature of process. It is a call to come into this Court, not only to hear a simple reversal or affirmance of the proceedings in the Court below, but for a general revisal of those proceedings. There cannot be service, to call a party into Court, upon his Attorney in *fact*. The fact that Mr. *Ross* was an Attorney of this Court, makes no difference. The 2d section makes service of notice that the application will be made to the Surrogate, good, when made either upon the widow or her *Attorney* ; but the act is silent as to the manner in which service shall be made when the application is on the part of the widow. This difference shews that the legislature intended to leave the service as at common law. The application against the widow is merely a call upon her to institute legal proceedings for the recovery of her dower. She may reside out of the state ; and her dower not being

(j) Sess. 29, ch. 168, 1 R. L. 61.

assigned, she has no tenant upon *the* land; and the notice to her, for which the statute provides, is for the original application. It is a matter *in pais*; whereas the present is to bring a party into Court upon a proceeding already instituted. In the case of *Cooper, widow*, &c.*(k)* the reasoning of the Court exhibits the light in which notices of this kind are to be viewed. Our appearance here makes no difference. It is no waiver, because we appear merely for the purpose of making the objection.*(l)*

2. As to the right of the demandant, he cited *Jac. L. D. Dower*, 3. 1 *Cruise's Dig.* 166, *Dower, ch.* 4, *s.* 27, and the cases there cited, especially the case of *Hoby* v. *Hoby*, 1 *Vern.* 318, and a note to that case in the last ed. of *Vernon; Bac. Ab. Waste*, (C) 3, and the *1st res.* in *Saunders' case*, 5 *Co. Rep.* 12.

He admitted, that these and other authorities establish, that a widow may be endowed of *certain* mines opened in the husband's life time and which he is using at his death. He thought, however, that none of the cases went beyond *collieries.* He said, there are special reasons for this exception, as may be seen by the case of *Clavering* v. *Clavering.*(m) Coal mines will spoil from the not working them. It is true, that *Coates* opened and partially worked the vein during his life time, but abandoned it, and was not engaged in working it at his death.

But if the appellant has a right of dower in this mine, the Surrogate has no jurisdiction of the case. The common law proceedings for the recovery of dower being expensive, the legislature have thought it their duty to give summary powers to the Surrogate. But it is evident, on examining the statute, that they mean to confine this remedy to the ordinary plain case of *lands*, where the dower may be set off by metes and bounds. The language of the statute does not extend beyond that case. It mentions lands only, as the subject of division; and by the 3d section, the admeasurers are required to *admeasure and lay off*, as speedily as may be, *one third part of the lands thus petitioned for admeasurement.* They have no power by the statute beyond marking off the *lands* by *metes* and *bounds.* After

Margin notes:

ALBANY,
Octobe 1823.

COATES
v.
CHEEVER.

(k) 15 John.
533.

(l) Vid. Malcom v. Rogers, ante, 1.

(m) 2 P.
Wms. 388.

this is done, the widow may have ejectment. Here is the extent of her remedy ; she must be content to take what the Surrogate has power to give her. This is the settled rule where the party elects his tribunal. The Surrogate has no power to assign her dower of this mine. Suppose it had been a mill, could the admeasurers assign her every third toll dish ? They must adhere strictly to the powers confided to them, which are merely to admeasure by *metes* and *bounds.* Yet the case of *Stoughton* v. *Leigh*, relied upon by the other side, places the profits of a *mine* and a *mill* upon the same footing as to the mode of assignment. The remedy of the appellant, then, lies in a real action, or in Chancery. Can the admeasurers mark off one third of the mine ? This is impossible. It depends on the course of the view, which, as the Court know, from the history of minerals, the admeasurers could not ascertain. It is essential that they should have power distinctly to designate the right.

Again ; we claim as *alienee,* and as such by the statute, are to be allowed our improvements, or in other words, the appellant can claim her dower, only according to the value of the lands exclusive of the improvements made since the sale.(n) How are the admeasurers to arrive at this allowance ? Is it by authorising us first to pay ourselves out of the profits, and afterwards giving the appellant the enjoyment of her dower ? In *Hitchcock* v. *Harrington,*(o) it was held that the wife is entitled to dower in an equity of redemption ; but as between the widow and mortgagee, the mortgage must be considered an alienation. To entitle her to dower, the mine must have been opened while the husband was seised. Unless opened during his life time, and while seised, it is not looked to by the widow for her support. Now, who is to try these various questions ? The facts in relation to them rest *in pais.* They do not apply to the right, but to the extent, of the dower. Can we, in this way, be deprived of our right to a trial by jury, or of a hearing in the Court of Chancery ? The admeasurers have no means of trying these matters. They cannot compel the attendance of a single witness, or the production of a single paper. But it may be said, that the statute requires

(n) 1 R. L. 60, s. 1.

(o) 6 John. Rep. 290.

this Court, on appeal, " to review the proceedings, and do therein what is just." This does not imply the power of issuing a *venire*, and trying these rights by jury. It relates to the subject matter, and means the exercise of a jurisdiction strictly appellate. It imports no more than a similar provision in the 25 dollar act, " that this Court shall proceed and give judgment, according as the very right of the case shall appear."(p) The alienation, the opening in the husband's life time and during his seisin, and the extent and value of the improvements, are all to be tried. The widow must pay or allow one third of the repairs. In the case put, of dower in a mill, the widow who receives every third toll dish, must defray one third of the expense in repairing the mill.

(p) 1 R. L 397, s. 17.

The Court will not reverse the decision of the admeasurers, except for error. Here is no error ; for the appellant's own tribunal have given her all that, by law, they had power to give. That she is unable to obtain more, arises from her own act and cannot be alleged for error.

*Shipherd*, in reply. If the notice of this application is defective, the Court will doubtless order a new one to be given, so as not to suffer a sacrifice of the appellant's right by the omission of her attorney. Without this course, the 30 days allowed for the appeal having elapsed, she would be remediless.

This service, had it been for the original proceeding before the Surrogate, would have been sufficient. The 2d section of the statute contemplates a service upon the attorney of the party in that case. To whom, then, ought notice of the appeal to be given ? Why not, as here, to the counsel of the party who appeared before the Surrogate ? On whom is a notice of appeal in Chancery to be served ? On the solicitor who conducted the cause in the Court below. Notice of filing a writ of error is served on the attorney in the Court below. In this case, notice to the Surrogate is enough ; which he receives by the exceptions being filed in his office, with a declaration of appeal. The statute requires the exceptions and notice to be served, without di-

recting the manner in which this is to be done, or designating the person to whom it is to be directed. The exceptions and notice of appeal are, ordinarily, served on the Judge or magistrate who makes the decision. When a party has no attorney, many kinds of notices, by a rule of this Court. may be served by being affixed in the Clerk's office. A written power to *Ross & Haseall* was not necessary. They admit that they were employed by *Cheever to watch and look out.* This makes them agents for the purpose of this whole matter, in all its stages. The respondent, the owner of these lands, resides in *Boston.* Will the Court send us there to serve the notice ? In similar cases, the most important rights are frequently compromitted by a mere advertisement in the newspaper. This is a continuation of the proceedings before the Surrogate. There is no writ or process to be served. It is a proceeding *in rem,* that merely requires reasonable notice to the parties interested, which they have received by a service of these papers upon their agent in the concern.

Our right to dower in this mine seems not to be opposed with any great degree of confidence, but many obstacles are raised to our obtaining it in this form. The Court have the same power on the subject, as a Court of Equity. The admeasurers may have no powers of trial, or to determine questions of law ; but this Court have a general power of review and correction over them and will guide their proceedings as to the law. The intervention of a jury is unnecessary. The facts, going to constitute our right, were all confessed before the Surrogate. The mortgage does not bar the right of dower. A mortgagee has nothing to do with the premises. A mortgagee works no disseisin of the mortgagor, as has been supposed. The latter remains seis ed precisely in the same manner, and to every intent, as if no mortgage had been given. But if the tribunal below had defective powers, this, of itself, is a reason why the Court should tell us so by setting aside the report, and turning us over to the legal remedy. It is said the admeasurers could not set off our rights by metes and bounds ; but they might, at least, have reported to the Surrogate that

we were entitled to one third of the ore upon these premises, and set off the residue by metes and bounds. The statute gives to the admeasurers all the powers of a Sheriff upon a writ of *habere facias seisinam.* The same difficulties intervene in that case, and yet it is held that he may assign every third toll dish of a mill. The remedy granted by the statute should be favoured, as one granted to speed and facilitate the remedy of the widow in the recovery of rights upon which her subsistence often depends. The only question here, is in relation to the quantity or extent of the dower, as to which the admeasurers may be fully directed by a special order. There is no difference in principle between a claim of dower in a *coal* and an *iron* mine. Both are appurtenant to—nay, form a part of the lands ; thus coming within the terms of the act. The improvements for which a compensation is claimed were made since the husband's death. The statute allowing improvements to the *alienee* ought to be confined, in construction, to those made by him before the death of the husband, upon which event he ought immediately to surrender the widow's dower.

WOODWORTH, J. delivered his opinion, nearly as follows : A preliminary objection is taken, that due notice of this appeal has not been given. *Cheever,* the respondent and owner of the lands, resided in *Massachusetts,* but he personally appeared to answer the proceedings which were instituted before the Surrogate ; and while the subject was before the admeasurers, *Hascall & Ross* were treated as his attorneys, in all the different stages of the investigation. After the decision, they were instructed by him, to keep a good look out. The statute does not designate the person on whom, nor the manner in which, notice of the appeal is to be served. Here they were served upon *Hascall,* the partner of *Ross.* This fact comes to the knowledge of the respondent, so that he has a fair opportunity of contesting the matter. He retains counsel, who watches the proceedings down to the time of the motion, when he is heard by his

ALBANY,
October, 1823.

COATES
v.
CHEEVER.

counsel against the appeal.(1)   Under the circumstances, I think the clause of the statute requiring notice is reasonably satisfied.   The party is fully apprized, and cannot suffer from the omission to serve the papers upon him personally.

The premises in question contain a valuable *ore bed*, which was partially opened by the husband of the appellant, during his life time.   Since his death, the owner has extended this opening at great expense, and with very great success.   In setting off dower, the admeasurers disregarded the increased value of the land arising from the circumstance of its containing this *ore bed*.   They estimated the value, considered merely with a view to its agricultural improvement, and assigned by metes and bounds sufficient to cover one sixth of that estimate, carefully avoiding any interference with the ore.   There is no doubt that as to mines in general, including beds of iron ore, if they are unopened at the time of the owner's death, his widow must take her dower in other land merely.   The newly opening a mine is waste, and the widow, having only an estate for life, can legally do no act which injures the inheritance.   All the cases agree in this.   But it is equally clear, that if, during the husband's life time, mines are opened, dower in them is properly assignable.   In this case, the admeasurement must accordingly be set aside.   The admeasurers must assign to the appellant her dower in all mines which were opened during her husband's life ;   but she cannot profit by any extension of that opening.   The admeasurers should take into consideration the value of the mine as far as it was opened during the husband's life, and then assign the dower, either by measuring off one third in value, or specifically assigning a reasonable share of the profits at short periods.   The case of *Stoughton* v. *Leigh*, (1 *Taunt.* 402,) contains the rules by which, I think, the admeasurers ought to be guided.

(1) Vid. *Jackson* v. *Stiles, ante,* 222.   In *England,* if there be any irregularity in the service of a rule to shew cause, it will be waived by the party's afterwards appearing, and shewing cause against the rule.   *Tidd.* 445.   2 *Archbold,* 267.

SAVAGE, Ch. J. By the 10th section of the act, (1 R. L. 61,) any party conceiving himself aggrieved, by the proceedings before the Surrogate, may appeal to this Court, giving notice in writing, within 30 days after filing the report of the admeasurers, of the causes of complaint and of his intention to apply to the next Supreme Court. The notice, in this case, was served on *Hascall*, the partner of *Ross*, within the time ; but no notice was served on the respondent, or his tenant in possession of the premises. *Ross* swears, that neither himself nor *Hascall* were the attorneys of the respondent, except as being occasionally employed by him and requested to keep a look out for him ; but they had no authority either to let or dispose, in any way, of the property in question, or any other property of the defendant. Service of notice on an attorney upon record, in the progress of a cause prosecuted or defended by an attorney, is good ; but *Ross* was merely counsel before the Surrogate, where attorneys are not known as officers of the Court. The case is somewhat similar to proceedings before Justices. Suppose, upon *certiorari* brought, the plaintiff should serve his assignment of errors upon the person who had acted as counsel for the opposite party before the Justice, would this be a good service ? The notice, in my opinion, should have been sent to the respondent by mail, or served upon his tenant, or upon his attorney in fact, if he had one. Either mode of service would probably be sufficient, where the respondent, as here, resides out of the state. If nothing farther appeared, therefore, I should be against the application upon the question of notice. But it seems, from the papers, that the respondent had actual notice of the bringing this appeal, and this in season to enable him to retain counsel and prepare for his defence. The whole case is fully before us, and I think we are justified, under such circumstances, in entertaining jurisdiction and deciding the case upon its merits.

Admeasurers of dower were regularly appointed on application of the appellant. They assigned her dower of lands in *Essex* county, being the third of one half of a certain lot, which is valuable chiefly on account of an *iron ore*

*bed* which it contains. The admeasurers assigned the dower under an impression, that she was not entitled to any share in the *ore bed.* They, of course, gave her no part of this bed ; nor did they estimate it, in the value of the lot, in setting off the sixth part.

The widow appeals to this Court, and we are now moved to set aside the assignment as inequitable. The respondent resists the application, on the ground that the appellant is not entitled to dower of the mine.

By the affidavits on the part of the respondent, it appears that *John Coates,* the husband of the demandant, in his life time, (1809) borrowed of the respondent $32,000, conveyed the premises in question to him for $15,000, and died insolvent; so that this property is all that the respondent has, or will ever be able to obtain for his debt. *Coates* had purchased one half of the premises of one *Harmon,* at the same time giving him a mortgage thereon for the consideration money. This mortgage has since been regularly assigned to the respondent. It farther appears, that the pits from which ore was taken by *Coates,* have filled up, by the falling in of earth and stone ; that the respondent has sunk a new pit, and built a wharf on the shore of Lake *Champlain,* at an expense of from two to three thousand dollars.

In *England,* the law seems to be settled, that the widow is entitled to be endowed of mines opened and worked in the life time of her husband, but not of such as were unopened. *Littleton* says,(q) " the wife, after the decease of her husband, shall be endowed of the third part of such lands and tenements as were her husband's at any time during the coverture, to have and to hold to the same wife, in severalty, by metes and bounds for the term of her life." Ld. *Coke,*(r) in his Commentary upon this text, enumerates several cases where the widow shall be endowed, though she cannot, from the nature of the property, hold by metes and bounds. One is the case of a mill, in which she may be endowed of the third toll dish. He enumerates a variety of other cases, but is silent as to *mines.* In *Hoby* v. *Hoby,*(s) the Court of Chancery recognized the widow's right to

(q) Co. Litt. 31 a.

(r) id. 32 a.

(s) 1 Vern. 218.

dower in a coal mine. In *Saunders' case*,(t) it was decided, in the Common Pleas, that a lessee for years, or for life, may dig mines which are open, but shall not open new ones, unless he has a lease of them specifically ; and then he may dig for them. In *Clavering* v. *Clavering*,(u) it was decided by Lord Chancellor *King*, that a tenant for life may open the earth, in new places, in pursuit of an old vein of coals, when the coal mines had been opened before he came to the estate. In *Whitfield* v. *Bewit*,(v) it was decided that A, having an estate for life, subject to waste, shall no more open a mine, than he shall cut down timber trees ; but in this case, the mines spoken of were those which had never been opened. In the late case of *Stoughton* v. *Leigh*,(w) the Court of Chancery put several questions to the Common Pleas, for their opinion. It is stated that the husband was seised of several lead and coal mines, some in his own land, and some under the lands of others. Some had been opened and worked, in his life time, and some had not. And it is asked, whether the widow is entitled to dower of all, or any, and which of the mines ? The Common Pleas answered, that the widow was dowable of all the husband's mines of lead and coal, which had, in fact, been opened and wrought before his death, in which he had an estate of inheritance ; and that her right to be endowed did not depend on the subsequent discontinuance of working them, either by the husband ; or those claiming under him since his death ; but that she was not dowable of mines which had not been opened at all ; that in assigning dower, the Sheriff should estimate the annual value of the open mines, and might assign them to her or not ; and when assigned to her, she may work them for her own exclusive benefit. If the property could be divided by metes and bounds, that was the most proper manner, but if it was not susceptible of such a division, he might proportion the enjoyment and perception of the profits, and direct a separate alternate enjoyment of the whole for short periods, proportioned to the share each had in the subject.

I cannot find, from what research I have been able to make, that this question has ever been adjudicated, either

ALBANY,
October, 1823.

COATES
v.
CHEEVER.

(t) 5 Co. 12.
(u) 2 Peer
Wms. 389.

(v) id. 240.

(w) 1 Taunt.
402.

(x) 3 Wobd.
Lec. 406.

(y) 6 John.
Rep. 290.

(z) 7 id. 278.

(a) 15 id.
460.

in this state or in any of our sister states ; but all the author-
ities in the English books, both ancient and modern, estab-
lish the right of the widow, to be endowed of such mines as
have been opened and worked during the life of the hus-
band. (x)

Mrs. *Coates,* then, is entitled to be endowed of the ore
bed in question.   The admeasurers were irregular in under-
taking to decide upon her right in the land.   It belonged to
the Surrogate to determine what proportion of the premises
should be set off, and it was the duty of the admeasurers to
obey his order.   What facts appeared before the Surrogate
the Court cannot know ; but it is to be presumed that he
decided correctly, and according to the facts presented to
him.

Another question for our consideration is, whether the ap-
pellant was entitled to *one third* or only *one sixth* of the pro-
perty. In *Hitchcock* v. *Harrington,*(y) it was decided that the
widow of the mortgagor was entitled to dower, the mort-
gage being paid up, and the tenant deriving title through the
mortgagor, the mortgagee having never entered or foreclosed
his mortgage.   In *Collins* v. *Torry,*(z) the demandant shew-
ed title from one *Merrick,* in 1775, to her husband. From
him it passed, through *Parsons* and *Winston,* to the tenant.
The tenant produced a mortgage from *Merrick,* in 1772,
which was duly assigned to the administrator of *Winston,* and
upon which, as appeared by an endorsement, interest was
paid, in 1784.   The Court decided in favour of the deman-
dant; and among other things, say—" A mortgage, before
foreclosure or entry, is not now regarded as a legal title,
which a stranger can set up.   It can only be used by the
mortgagee and his representatives."   It is added—" The
purchase of the mortgage was, in effect, a discharge of the
mortgage, in favour of the title under the mortgagor.   It is
therefore extinguished, and the title of the tenant relates
back to, and is founded on the seisin of the husband."   In
*Stow* v. *Tifft,*(a) the Court decided that the widow of a
mortgagor for the purchase money, the deed and mortgage
being cotemporaneous, is barred of her dower, by foreclo-
sure of the mortgage.   A question, then, presents itself,

whether the purchase, by the respondent, of *Harmon's* mortgage, is to be considered an extinguishment of it, or whether his possession is to be considered an entry, under the mortgage, in the nature of a foreclosure. The spirit of the cases cited seems to be this; that where the tenant in possession enters by virtue of a purchase from the mortgagor, then, the subsequent purchase of the mortgage, by him, is an extinguishment, and the widow's right relates back to the purchase by her husband, and she shall recover. But where the tenant enters by virtue of a foreclosure, or after a forfeiture for non-payment of the money, then the estate is deemed never to have vested in the husband, and the widow is not entitled to dower.

In this view of the case, Mrs. *Coates* is entitled to dower in the whole of the premises, according to the value at the time of alienation by her husband. The Surrogate, therefore, was right in directing the admeasurers to lay off *one third*, by metes and bounds, and the admeasurers erred in adopting a different rule. They ought to have assigned to the widow one third of the whole estimated value of the property, deducting the value of the improvements made since the sale by her husband. If practicable, they should have given her a proportion of the ore-bed, assigning to the tenant his own improvements. If such a division was impracticable, then they should have directed *an alternate occupancy of the whole, or a share of the profits,* always securing to the tenant, under our statute,(b) his own improvements, or a suitable allowance for the use of them.

(b) *Sess.* 29, *ch.* 168, *s.* 1, *R. L.* 160.

It was objected, on the argument, that a Surrogate's Court, is not a fit tribunal to be entrusted with proceedings of this nature. This objection has no weight. The legislature has given the power, and I can see no reason why three admeasurers are not equally competent with the Sheriff, to make a just partition.

Accordingly, the following rule was entered:

ALBANY,                                               *November 4th,* 1823.
October, 1823.
                    " In the matter of Maria Coates, appellant,
COATES                              and
  v                 Abijah Cheever, appellee.
CHEEVER.

On reading and filing an appeal from the admeasurement
of dower, made in pursuance of an order of the Surrogate of
the county of *Essex,* and the affidavits and papers accom-
panying the said appeal, it is ORDERED, that the admeasure-
ment of dower heretofore made, be set aside and vacated ;
and that the admeasurers proceed to assign to the said *Maria,*
her reasonable dower in the lands and tenements mentioned
and described in the order of the said Surrogate ; and where-
as it appears, that on the premises, in which dower is claim-
ed, there is a valuable *iron ore bed,* which *John Coates,* the
husband of the said *Maria,* opened and worked in his life
time, and that he was the owner and proprietor of the said
lands, when the said ore bed was opened and worked as
aforesaid ; by reason whereof the said *Maria* is dowable of
and in all such ore beds on the said premises, as were, in fact,
opened and wrought before the death of her said husband,
and wherein he had an estate of inheritance during the
coverture ; It is further *ordered,* that, in making the assign-
ment, the admeasurers estimate the annual value of the ore
beds that had been opened as aforesaid, as part of the value
of the estate of which the said *Maria* is dowable ; that the
admeasurers may, in their discretion, assign the dower of the
said *Maria,* in land set out by metes and bounds, and con-
taining none of the said ore beds, or they may include any of
the said ore beds, so as aforesaid opened, in the said assign-
ment, describing them specifically, if the particular lands in
which they lie should not also be assigned ; but if those lands
should be included in the assignment, the open ore beds
within them need not be so described, being part of the land
itself assigned ; or the said admeasurers may divide the en-
joyment or perception of the profits of any of the said open
ore beds, by directing a separate alternate enjoyment of the
whole, at short periods, proportioned to the share each party
had in the subject, or by giving the said *Maria* a proportion
of the profits. In each and every case, however, the said

admeasurers are not to take into account or assign dower of any part or portion of said ore bed opened by said *Abijah Cheever* and others, since the death of the said *John Coates,* nor the improvements made on the said premises by the said *Abijah Cheever,* and others since the death of the said *John Coates.*"

<div align="right">
ALBANY,
October, 1823.