Jones, C. J.
It is clear that the discharge, which is admitted by the replication in this case, is a bar to the action, unless the matter set forth in the replication, has been established by the evidence, and is sufficient to obviate the effect of the discharge, and remove the bar it created. The substance of the replication is, that the defendant has waived the benefit of the discharge, by a subsequent recognition of the bond as obligatory upon him, and the ratification of it as a subsisting debt.
It is settled, that a subsequent promise to pay, will avoid the operation of a discharge, which would otherwise bar the recovery of the debt so promised to be paid. In this case, the old debt, which the testator was bound, under a penal obligation, to pay, constituted a sufficient consideration to give effect to a promise, which might repel the force of the discharge, and remove the obstacle it would otherwise oppose to the action on the original demand. But here there is no express promise to pay the debt. The utmost that can be successfully contended for, is the admission of the bond as subsisting against the testator, and the waiver that admission implies of the benefit of the discharge, or a promise inferable from the receipts endorsed on the bond, *537 or the consent of the 2d of September, 1818, or both conjointly, to pay the debt.
The question then presented will be, first, whether such an admission, or implied promise, has been shown in the present case, and if so, whether it is a sufficient waiver of the discharge, to operate as an avoidance of it, and obviate its force as a bar to the action on the bond.
Upon the first question, as to the fact of the admission or pro. mise, the only evidence of it is, the endorsment on the bond, of the payments of principal and interest, on the 18th of July, 1816j and the consent bearing date the 2d of September, 1818.
The payments, according to these endorsements, are prior in point of time to the discharge, which was given on the 21st of August, 1816, and, admitting the position assumed by the plaintiffs, that the payment of interest admits the subsistence of the principal debt, the evidence of that endorsement, can have no bearing on the question, unless it be true, as the plaintifls assume it to be, that the discharge in this case, applies only to debts contracted anterior to the presentment of the petition.
In the case of M‘Neilly v. Richardson, [4 Cowen’s R. 607,] it was held that the discharge under the first section of-the act, upon the application of the insolvent, in conjunction with two thirds of his creditors, refers to the existing state of things at the time of presenting thq petition; and that debts contracted, or accruing subsequently to that time, though they fall due before the discharge, cannot be proved under the assignment, and are not barred, or affected by the discharge.
In this case, the application was by a creditor, under the 9th section of the act, which is supposed to be hostile to the debtor, and has for its foundation, the apprehended waste or embezzlement by him of his estate or effects. The debtor is not intended, and does not appear to have any agency in the proceeding.
Another prominent distinction between the two cases deserves to be noticed. It is this; the insolvent who petitions under the first section of the act, is required to deliver to the Judge, at the time of presenting his petition, a full and true ac *538 count of all his creditors, and the moneys owing by him to them respectively, together with a full, true and just inventory of all his estate, both real and personal. But when the creditor applies for relief under the 9th section of the act, no account of creditors or inventory of estate is required to be delivered by the insolvent, until an assignment shall be directed by the Judge to be-made.
Still, however, the provisions of this section of the act, look to the creditors of the imprisoned insolvent, at the time of the application for relief, and the order, the Judge is to make, upon the application, is, to show cause why an assignment should not he made of the debtor’s estate, for the benefit of all such creditors. And if the insolvent make the assignment directed, he is to be discharged in like manner, as if he had petitioned for his discharge, in conjunction with the creditors, under the first section of the act; but if he refuses, or neglects to do so, an assignment of his estate is to be executed by the magistrate, and which the act declares shall vest in the assignees, the whole- of the estate which belonged to the insolvent, on the day of the first publication of the order to show cause why an assignment should not be made.
The construction of the 9 th section, therefore, must substantially correspond with that of the 1st; and a debt accruing subsequently to the order to show cause, would not be proveable under the assignment, nor barred by the discharge. It it settled, that the renewal of an old debt by a new promise, will obviate the effect of a discharge, and the case cited from Espinasse is in point, to show, that the time of making such new assignment is not material. In that case, it was made intermediate the issuing of the commission and the signing of the certificate, and it was held effectual. There the acts relied upon as renewing the debt, were after the full publication of the order to show cause, but previous to the discharge, and if sufficient in themselves to revive it, will have that effect.
In the case of Alsop and another v. Brown, [Dougl. 191,] which was an action of debt on a bond, to the trustees, under one Wilson’s will; the defendant, who was a principal debtor. *539 pleaded a bankruptcy, and on the trial it appeared, that interest had been paid on the bond, after the defendant obtained his certificate, but it did not appear whether such interest was paid by the defendant, or one of his sureties. Lord Mansfield said, that if the interest was not paid by the bankrupt there was no question ; but, that if it was, it would be an admission by him, that the principal was then due, and he might be liable as on a new contract.
In the case before us, the payments were-confessedly made by Sexten, for whom the bond was given, and not by the insolvent It is true, that the money is expressed in the receipt, to be received from Doane the obligor, by the hands of Sexten; but that form of expression may have been used merely to show that it was a payment on account of the bond, and to go to the credit of the obligor, as he alone was bound by the obligation for the money; and the legal effect óf a payment, by any person, would be a payment and receipt for the obligor.
This payment therefore' must have been made by Sexten, the principal, and cannot, on the declaration of the receipt alone, be claimed to establish the admission of the debt by the obligor, so as to waive the benefit of his discharge as a bar to the action.
The next question is, whether the writing or consent of the 2d of September, 1818, amounts to such an admission? That writing was signed by Doane, the obligor, and by it, he consented that Tooker, the obligee, might make any settlement with Sexten, without giving up or losing any lien he might have on him, Doane, for the amount of the bond by such settlement.
This the plaintiff insists upon, as an acknowledgment of the bond, which binds the defendant to the payment of the debt; and the opinion of Lord Mansfield, in the casé cited from Douglass, is relied upon as an authority for his liability.
The defendant does, certainly, by his consent, recognise the bond as a subsisting security; but does he admit that it is obligatory upon him, or is it fairly to be inferred from the expression he uses, that he acknowledges his present liability to pay it ? The actual payment of interest on a bond, is the clearest testimony that can be offered of the admission of the party who *540 pays it, of Ms liability to pay. But do the terms of this consent, import so strong and unqualified an admission that the principal debt was then due from the defendant, as the payment of interest by him would have implied 1
The permission to make a settlement of the debt with Sexten, assumes that the obligation of paying the debt lies upon him. But does the consent that such a settlement may be made by the obligee with Sexten, without giving up any lien the obligee may have upon Doane for the amount of the bond, necessarily admit that Tooker then had a lien, or claim upon Doane for the whole amount which might be enforced against him ? If the parties fully understood at the time that Tooker had a subsisting demand against Doane upon the obligation, which the consent was intended to preserve, the bond would undoubtedly have been treated as an undisputed debt of Doane. But what could have induced Tooker, the obligee, if the legal obligation of t)oane was admitted, to employ language in his consent to settle with Sexten, which imparted a doubt of the subsisting liability of Doane, and was calculated to embarrass him in his future recourse to Doane, in case of a failure of satisfaction from Sex-ten 1 The fair presumption from the acceptance by Tooker, of a consent so guardedly worded is, that his lien or claiip upon Doane for the amount of the bond was not conceded, and might he questionable.
It was asked why the consent should be required or given, if the debt was understood to be barred by the discharge ? The answer is, that probably some question had been raised as to the effect or legal character of the discharge; and Tooker wished to secure whatever right he might have.
On the part of the defendant it was broadly contended, that an absolute and unqualified admission of the bond as a subsisting debt, would not countervail the effect of the discharge, but that the bond required an express promise of payment to obviate the bar, and the case of Mucklow v St. George, [4 Taunton 612,] favors that opinion. In that case the defendant being indebted to the plaintiff on a promissory note, took the benefit of an insolvent act, and being called upon, after his discharge, by the servant of *541 the plaintiff, for the debt, he inquired the amount of it, and being ° informed, he answered that he was not able at that time to discharge it, but his friends were about to do something for him, and he would pay the debt by instalments. At the trial the plaintiff relied upon this answer as evidence to establish a new promise to pay, but was nonsuited. On a motion to set aside the nonsuit and for a new trial, the counsel contended that this amounted to a promise to pay the debt by reasonable instalments within a reasonable time. But the court dissented from the proposition, and observed that this case was not like cases under the statute of limitations in which the evidence might suffice to revive the debt. The answer of the defendant in that case was too indefinite and uncertain to establish a binding promise to pay the debt, the amount of the instalment and the time of payment being undefined and unsettled, and the promise obviously based upon the aid he expected from his friends, and which it did not appear that he had received. But it was a clear admission of the debt, and an acknowledgment of his present liability to pay it; yet it was not held sufficient to revive the debt.
I am not prepared to say that an express promise is necessary to the avoidance of the bar, created by the discharge. It is not necessary for the decision of this cause to push the principle to that extent, and such a rule would hardly conduce to the purposes of justice. The conduct of parties often speaks as intelligibly and as strongly as their language; and undeniable acts of recognition, such for example as the payment of interest or a part of the principal, indicates a sense of present liability, and an engagement to pay as clearly, as an express promise could do. Such acts carry with them internal evidence of the waiver of the discharge, and the renewal of the obligation of the debtor to pay the debt. For the same reasons, and on the same ground, a clear acknowledgment of the debt, as a present subsisting obligation of the party, freely and understandingly made, ought to be, and in my judgment is, equally with a part payment of the demand, a waiver of the discharge, and a renewal or revival of the legal obligation to pay the debt. But there must be a distinct and unqualified admission of the debt, and an acknowledg *542 ment of the debtor’s continuing and subsisting liability to pay it, in order to obviate and repel the operation of the discharge, and enable the creditor to recover in an action for the antecedent demand.
Does the writing in this case import such an admission of the bond and acknowledgment of its continuing and binding obligation upon this defendant, as to manifest a waiver by him of the benefit of his discharge ? Or is the consent and authority it gives so cautious and qualified, as to preserve to him all the protection which that discharge could give him ? I understand the writing as intending to authorize a composition with Sexten, the principal debtor, without discharging him from his obligation as surety ; but 1 can discover no trace of any intention to waive the benefit of the discharge, or to admit any present liability on the part of Doane to pay the debt. And in niy judgment it would be a forced construction of the consent, to infer from it the broad and unqualified recognition of the bond as a subsisting debt which he was absolutely unable to pay, or to ascribe to it any other meaning or legal effect than that of a license by the defendant as surety to the obligor to compound with the principal, and a consent that such composition should not be made the ground of defence to an action against him, in case the plaintiff should at any time be disposed to contest, the validity of his discharge.
But it was further urged, that the bond was not considered, or treated by the defendant as his own debt, but was regarded as the debt of Sexten, to be provided for and paid by him, and that it was not considered as provable under the assignment, or barred by the discharge; and in proof of this, the payments by Sexten, and the subsequent recourse to him by Tooker, were advanced as decisive evidence; and the insolvent papers showing that the debt was not included in the account of creditors, nor any notice taken of it by Doane, or proof made of it by Tooker, as a creditor, were offered to justify and corroborate this understanding. These documents all concur in showing that Doane did not look upon the bond as a debt which he was to pay; and the probability is, that all parties understood that Sexten alone *543 was to be held answerable for it. But this understanding of the parties could not change their legal obligations, nor could the omission of Doane to insert the debt in his inventory, exclude the creditor from his right to a dividend of the estate, or obviate the effect .of the discharge as a bar to the debt. Nor was that understanding, or the acts which grew out of it, of any material weight in the scale of evidence to establish the continuing liability ofDoane for the debt, or his admission of such liability after his discharge. The just inference deducible from his silence in his insolvent papers as to that debt, would seem to be that he did not hold himself liable for the payment of it, but that it was understood and arranged at the time of his assignment, that Tooker was to exonerate him, and look solely to Sexten. The contemporary payments by Sexten, pending the application for the discharge of one half of the debt, with the interest on that moiety up to the day of payment, justifies that conclusion, arid favors the idea that the arrangement was to relinquish all claim upon Doane, the _ surety, and look to Sexten for the residue. The reliance upon Doane, on the faith of that arrangement, may have induced him to omit” the debt in his account, which he would have been otherwise bound to insert.
Be that as it may, the omission could give Tooker no claim upon the insolvent personally for the debt, unless it was fraudulent, and as no fraud was pretended, the proof of the omission by the production of the papers, was not material, and the evidence was properly rejected.
Oakley, J.
The question in the case is, whether the .evidence supports the issue on the part of the plaintiffs.
As to the payment on the bond, made by Sexten, it is sufficient to remark, that it cannot be considered as the act of the defendant. The receipt was endorsed on the bond, by .the plaintiffs’ testator, and to make it the ground of inferring an acknowledgment by the defendant of the existing validity of the bond, and a promise to pay it, there should be clear proof that the payment was made by the authority or at the request of the defendant. There is no such proof in the case, and at the time the payments *544 were made, the defendant had assigned his whole estate. The money was paid by Sexten, and his act surely cannot conclude the defendant's rights.
The principal question is, whether the agreement between the parties, of the 2d September, 1818, is sufficient evidence of the fact set up in the replication. The defendant, on that day, agreed with the plaintiffs, in writing, that he might “ make any “settlement with Sexten, (for whose benefit the bond was given,) “ without giving up or losing any lien which he might have on “ the defendant for the amount of the bond.” It is contended by the plaintiffs, that it must be necessarily implied from this agreement, that the defendant considered the bond, as then, valid and subsisting, and that a promise to waive the benefit of his discharge and pay the bond, may be inferred from it.
I think that this would be too forced an inference. The fair import of the agreement appears to me to be, that the then existing rights of the parties, were to remain unimpaired by the intended arrangement with Sexten. The plaintiffs were at liberty to question the validity of the discharge, either upon the ground of its unconstitutionality, or on the ground of fraud, in obtaining it. The arrangement with Sexten, if made without the consent of the'surety, might have discharged the bond, independently of the dischai’ge under the insolvent act. It is reasonable to conclude, that the agreement in evidence was resorted to, only for the purpose of avoiding that consequence. At least, that construction of it will give full effect to its terms, and no further inference necessarily results from it. As for the insol- ■ vent .papers which were offered in evidence by the plaintiffs, it is quite clear that they were irrelevant and inadmissible under the issue. They could not avoid the effect of the discharge as it appears upon the record, and they did not in any manner conduce to prove the facts set up in the replication.
I am of opinion, on the whole case, that the defendant is entitled to judgment.

Judgment for the defendant.

[William Mitchell, Att'y for the plffs. Seaman and Wills, Att’ys for the deft.]