## NEW YORK SUPERIOR COURT.

### ELIZA J. BROWN, respondent agt. EBENEZER H. BROWN, appellant.

An *equitable action for the admeasurement of dower*, is sustainable under the Code. Courts of equity have always had jurisdiction, concurrently with courts of law in such actions.

If it be also an action of *ejectment* for the recovery of dower, there is no difficulty in the junction of the two. Courts of equity have always administered other equities in conjunction with such admeasurement.

But all the boundaries of jurisdiction and distinctions, between causes of action as legal or equitable being removed, there seems no reason, why all the relief to which the plaintiff is entitled should not be given in *one action*.

In an action to recover dower, where the court adjudge that the plaintiff is entitled to dower, it may appoint a *referee to admeasure the plaintiff's dower, and assess her damages by loss of rents and profits*, instead of the *three freeholders* formerly required in an action of *ejectment for dower*. (2 *R. S.* 312, § 48, *sub.* 1; *Id. p.* 310, §§ 36 *to* 47;) or a *special petition* (*Id.* 489, § 10).

Where a *referee* is appointed for the purpose of admeasuring and assigning dower, &c., the defendant waives every objection, except a want of jurisdiction and even a *right of appeal* from the order of reference, by litigating before the referee without such appeal, and by filing exceptions to the report.

On *appeal* also, such an error in the proceeding as admeasuring dower by a *referee*, instead of the *three freeholders*, should be disregarded, as not affecting the substantial rights of the defendant.

A plaintiff is entitled as dower, to *one-third* of the land according to *its value at the time of its alienation* by the husband; and is not to be allowed for any increase in value since, or any *improvements*. But the improvements may be *assigned* as a part of the dower provided they are not taken into account in *admeasuring* the dower; although if an assignment be otherwise practicable they are not to be included.

Where a referee has exercised his discretion in assigning *improvements* as a part of the plaintiff's dower, which decision has been passed upon by a judge at special term, such decision should not be disturbed on *appeal*.

In this case the *taxes* before the six years to which the inquiry of valuation of premises, &c., was limited, were properly excluded by the referee, as was also the rate paid for the use of *Croton water* by the defendant. Also any amount paid for *ornamental work* or *repairs to the additions or improvements* was properly excluded.

THIS is an action under the Code (in the nature of a suit in equity), to recover plaintiff's dower in twelve lots of land and a dwelling house at Harlem, conveyed by plaintiff's husband in his life time to defendant, and occupied by the alienee at all times thereafter.

The complaint alleges these facts, and that the plaintiff

had demanded her dower, and defendant refused to assign it to her. The prayer of the complaint is, that plaintiff's dower may be assigned and admeasured to her, and that she may be put in possession, and that she may be paid one-third the rents of the premises, and that she may have such other relief as is proper.

The answer admits the conveyance to defendant by plaintiff's husband, and defendant's occupation of premises, but avers a release of dower.

The trial took place at special term without a jury, before Hon. John M. Barbour, justice. The plaintiff proved the allegations in her complaint. The defendant offered no defense. The plaintiff offered evidence of the value of the premises and of the rents, with a view to having the plaintiff's dower assigned and *mesne* profits awarded by the court. The court, however, although admitting the evidence, declined to adjudicate upon these matters, further than to decide the plaintiff entitled to dower and a portion of the rents, and to direct a reference to ascertain them.

The judgment directed a reference to Daniel P. Ingraham, Jr., to ascertain and report to the court what was proper dower for plaintiff, &c., and to take and report to the court, an account of the rents and profits for six years, prior to the entry of the judgment, exclusive of the profits arising from improvements, and deducting taxes and necessary repairs.

The reference was had, and the referee made his report, assigning three lots of land and the dwelling house in question, to plaintiff as her dower, and reporting a small amount $679.15 due her for her share of the rents of the property during the period in question.

The defendant excepted to this report, and the exceptions were fully argued at special term, and the report remitted to the referee for specific findings upon some minor matters.

This additional report was made by the referee, and after further argument, the report was in all things confirmed and final judgment entered accordingly.

Appeal has been taken from the judgment by the defendant; and the exceptions which were taken by defendant on

the trial before the court, and on the hearing before the referee, together with the exceptions filed to the conclusions of law and fact of the court, and to the report of the referee, may be subject of review on this appeal.

The facts are as follows : On the 20th day of December, 1854, William H. Brown, the husband of the plaintiff, conveyed to the defendant certain lots of land lying between One Hundred and Twenty-fifth and One Hundred and Twenty-sixth streets and the Seventh and Eighth avenues, and a dwelling house thereon. On the 27th of October, 1855, William H. Brown died. The plaintiff never released her dower in the premises. Shortly after her husband's death, she demanded of the defendant that her dower be assigned to her, &c. The defendant refused. The premises in question consisted of twelve lots, six fronting on One Hundred and Twenty-fifth street, worth $1,900 each, together $11,400, and six fronting on One Hundred and Twenty-sixth street, worth $800 each, together $4,800. The dwelling house, exclusive of improvements put upon it by the defendant, was worth $3,500, and the other buildings, &c., were worth $400, making together $20,100, of which the widow's one-third was $6,700. The improvements added to the dwelling house were worth, at the time of the hearing, $800, making it worth, in its improved state, $4,300. The referee assigned this house to the widow, together with three of the inferior lots worth $2,400, making the whole amount of the value of the property awarded her equal to $6,700, to be held by her during life. The rents for the period inquired of amounted to $3,900, which were reduced by repairs and taxes, &c., to $2,037.56, of which the plaintiff was entitled to one-third, or $679.15.

O. R. STEELE, *attorney, and*

R. W. ANDREWS, *counsel for defendant, appellant.*

This action was brought for the admeasurement and recovery of dower in certain lands and premises in One

Hundred and Twenty-fifth and One Hundred and Twenty-sixth streets, New York.

The action was tried before Hon. J. M. BARBOUR on the 28th day of October, 1863, and the justice found that plaintiff was entitled to dower, and that in November, 1855, and subsequently, she had demanded the dower of defendant, and that he refused to comply with the demand. That plaintiff was entitled to one-third of the rents from 27th day of October, 1855, up to the time of such finding, with certain deductions, and directed a reference to assign the dower and set aside particular lands.

An order of reference was thereupon made to D. P. Ingraham, Jr. The reference proceeded before Mr. Ingraham, who, on the 1st of September, 1864, made his report, setting aside to the widow the dwelling house upon the premises, with all its improvements, and three lots of land ; and that plaintiff was entitled to receive $679.15 for rents.

The report was sent back for a more specific report as to the value of the house and these lots.

A supplemental report was made November 29th, 1864.

These reports were confirmed December 5, 1864, and judgment entered accordingly.

I. The justice erroneously finds that demand of dower was made and refused in November, 1855.

The only evidence as to demand is contained at folios 11, 12, 26. The only positive evidence of demand is the written demand at fol. 26, which was made June 18, 1863.

II. The widow is only entitled to damages, or rents as damages, from the time of demand of dower ; and the damages are not to be estimated on any improvements made after death of the husband (3 *R. S. 5th ed.* 33, §§ 20, 21).

The justice, therefore, erred in finding that the plaintiff was entitled to one-third of the rents from October 17, 1855.

III. The justice erred in sending the proceedings to a referee to assign the dower. There are but two methods prescribed by statute to recover dower.

1. Ejectment for dower (3 *R. S. 5th ed.* 592).

2. Proceedings by petition to the supreme court, county

court or surrogate, for admeasurement of dower (3 *R. S. 5th ed.* 791).

In both these cases the statute expressly provides that "three reputable and disinterested freeholders" shall be appointed commissioners to admeasure dower. (3 *R. S. 5th ed. p.* 598, § 48, *&c.; p.* 792, § 13.)

Neither of these provisions is inconsistent with the Code of Procedure, and both still exist. There can be no question as to the existence of the action of ejectment.

And the other proceeding by petition is a "special statutory remedy, not heretofore obtained by action," and is saved by section 471 of the Code.

It will be seen that the referee has attempted to get over these provisions of the statutes, as he reports that he "took the deposition of three disinterested freeholders," &c.

IV. The referee erred in setting aside for the widow, the dwelling house. All the improvements made by defendant were upon the house, and in giving the house to the plaintiff she gets all these improvements, and the defendant gets vacant lots, without any allowance being made to him for the improvements.

V. The referee errs in finding that the only amount paid for taxes by defendant was $52.94.

The evidence shows that defendant paid for taxes of 1857, $89.62. Tax of 1859, $103.61. And for Croton water taxes of 1857, 1858, 1859, 1860, 1861, 1862 and 1863.

The referee erred in striking out the evidence of payment of Croton tax. This tax was a lien on the property for the non-payment of which the property might have been sold.

VI. The referee should have allowed payments for insurance.

Insurance was necessary for the preservation of the property, and was as well for the benefit of the plaintiff as of defendant. And defendant expended for that purpose $302.25.

MATHEWS & SWAN, *attorneys, and*
ALBERT MATHEWS, *counsel for plaintiff and respondent.*

*First.* This is an equitable action to have dower assigned to the plaintiff. The complaint, and its prayer, is framed in the manner of a bill in equity, and is a proper mode of proceeding. (1 *Story's Equity Jurisprudence,* § 624 *to* 632; *Swaine* agt. *Perrine,* 5 *Johns. Ch. Rep.* 482; *Badgley* agt. *Bruce,* 4 *Paige Rep.* 98; *Townsend* agt. *Townsend,* 2 *Sandf. S. C. Rep.* 711; *Code of Procedure,* § 468.)

I. The Revised Statutes have not affected the equitable remedy for dower. They abolished only the legal writ of dower, and substituted therefor the legal action of ejectment (2 *R. S. p.* 343, § 34, *and p.* 303, § 2, *sub.* 2).

II. The plaintiff properly recovered the rents and profits, as well as the assignment of her dower in the same action. (1 *Revised Laws, p.* 57, § 20, *p.* 60, § 1; 1 *R. S. p.* 742, §§ 19, 20, 21; *Code of Procedure,* § 167, *sub.* 5.)

III. If there be any technical error the court must disregard it (*Code of Procedure,* § 176).

*Second.* The exceptions taken on the trial to the admissibility of evidence are frivolous.

I. The testimony was admissible under the issues.

II. The evidence could not have affected the judgment or prejudiced the defendant. (*Craig* agt. *Sprague,* 12 *Wend. R.* 41; *Belmont* agt. *Coleman,* 1 *Bosw. Rep.* 188.)

*Third.* The judgment was proper in form, and the exceptions thereto are immaterial. (*Hugh's Equity Draughtsman, p.* 827; *Swaine* agt. *Perrine,* 5 *Johns. Ch. R. p.* 482; *Williams* agt. *Cox,* 2d *Edw. V. C. R.* 178; *Stilwell* agt. *Doughty,* 2 *Brad. Surr. R.* 311.)

*Fourth.* This being an equity case, the exceptions taken upon the hearing before the referee after judgment, are not to be considered with the same strictness as in a bill of exceptions arising in an action at law. The judgment will not be reversed for technical error. It is enough if it is substantially right (*Forrest* agt. *Forrest,* 25 *N. Y. R.* 511).

*Fifth.* The report of the referee was in all respects just and warranted by the facts proved before him. So far as there was any conflict of evidence, his findings, and those of the court at special term, upon the matters of fact, are

conclusive. (*Cohen* agt. *Dupont*, 1 *Sandf. S. C. R. p.* 262; *Mazette* agt. *N. Y. and Harlem R. R. Co.* 3 *E. D. Smith's R.* 98; *Pearson* agt. *Fiske*, 2 *Hilton R.* 146; *Skinner* agt. *Oettinger*, 14 *Abb. R.* 109; *Brooks* agt. *Christopher*, 5 *Duer R.* 216.)

I. The referee was bound to estimate the value of the property (on the diagram) as follows :

| | |
|---|---:|
| Six lots on One Hundred and Twenty-fifth street, No. 437 to 442, at $1,900 each ........................... | $11,400 |
| Six lots on One Hundred and Twenty-sixth street, No. 399 to 404, at $800 each.................. | 4,800 |
| Dwelling house, exclusive of "improvements" by defendant................................. | 3,500 |
| Other buildings, &c., exclusive of "improvements" by defendant............................... | 400 |
| | $20,100 |

Widow's share one-third, $6,700.

1. The testimony of the plaintiff's witnesses furnished the only reliable criterion for determining their value.

(*a*) Samuel B. Kenyon, a *freeholder*, resident of Harlem for twenty years, dealer (buying, selling, mortgaging, renting,) in real estate for twelve years, gives the above estimate.

(*b*) Benjamin F. Raynor, resident of Harlem, *freeholder*, dealer in real estate in Harlem (buying, selling,) for many years, gives the same estimate.

(*c*) Walter Brady, also a resident of Harlem, *freeholder*, dealer in real estate for twelve years, gives the same estimate and a little more.

2. These estimates are opposed only by the defendant in person, whose opinions are unreliable.

(*a*) He is interested pecuniarily in the suit.

(*b*) His feelings appeared on the reference to be bitterly excited against the plaintiff.

(*c*) His judgment is naturally biased in respect to his own property and dwelling.

(*d*) His estimates and opinions are fanciful, and do not bear scrutiny or criticism. They were incapable of being

made the basis of the referee's report. They were irreconcilable with the estimates of the disinterested witnesses.

3. The defendant values only the house and buildings, and does not controvert the valuation of the lots.

II. In setting apart a portion of the property, worth $6,700, to the widow, the referee had a right to divide as he thought proper, and properly give her a life estate in that which will be available to her. · The vacant lots would be useless to a life tenant. The defendant can easily keep his property by paying the widow a fair equivalent (2 R. S. 490, § 13 ; White agt. Story, 23 Hill R. 547.)

1. Adopting the estimates of the three disinterested witnesses, the widow was entitled to have the dwelling set apart to her, together with three lots on One Hundred and Twenty-sixth street, thus :

| | |
|---|---|
| Dwelling house | $3,500 |
| Improvements | 800 |
| Three lots | 2,400 |
| | $6,700 |

2. Even upon the estimates of the defendant himself, the widow should have the house, and at least the two lots upon which it stands, and one of the adjoining lots.

III. The referee, for the reasons aforesaid, was bound to adopt the testimony of the three disinterested freeholders, as to the value of the rents, during the period required by the order of reference, that is, from October 28, 1857, to October 28, 1863, as follows : Rent of dwelling for six years, exclusive of the increased rent by reason of improvements, $700 per year, equal to $4,200.

1. The three freeholders, Kenyon, Raynor and Brady, were competent to speak, and were disinterested.

2. The witness Dean was not competent to speak on the subject. He had no knowledge upon which to base an opinion. His estimate is purely fanciful and unreliable.

3. The estimate of the defendant is unsupported, and is extremely improbable on its face, and is open to the same observations as are made as to his other estimates.

IV. From this amount the referee deducted all the "taxes" imposed on the premises, for the six years, between October 28, 1863, which had been paid by the defendant. But he could not deduct the penalty added by extraordinary interest for defendant's delinquency in not paying during the time allowed by law for that purpose, nor could he deduct "Croton water rates," which are not "taxes;" he also allowed for such repairs, as were necessary to "keep the premises in ordinary tenantable condition. But he could not allow for matter ornamental or matter of taste, nor for repairs to "gas fittings" or "plumbing," which were part of the defendant's additions and "improvements," and allowed as such in the valuation thereof.

V. It rested in the discretion of the referee, subject to approval of the court at special term, to determine the amount of land, &c., to be set apart as the widow's dower, and this matter is not properly the subject of review upon appeal (*Forrest* agt. *Forrest*, 25 *N. Y. R.* 514).

*Sixth.* There was no error of law in the report, and the exceptions thereto are not well founded.

I. The defendant's exceptions "First," "Fourth," "Fifth" and "Sixth," are made to matters of fact exclusively within the province of the referee, and fully sustained by the evidence, although conflicting.

II. The defendant's exceptions "Second," "Seventh" and "Ninth," are made to matters beyond the scope of the powers and duties of the referee, as prescribed in the judgment.

III. The defendant's exceptions "Third" and "Tenth," are made to matters properly determined by the referee, and therein he is fully sustained by the facts before him.

IV. The defendant's "Eighth" exception is in conflict with the report itself.

*Seventh.* The questions of fact arising before the referee were fully canvassed before the court at special term, upon the argument of the exceptions to the report. The decision of the court is conclusive as to all matters of fact (*Osborn's Admistratrix* agt. *Marquand*, 1 *Sand. S. C. R.* 457).

*Eighth.* There was no error of the referee in the admission

or exclusion of testimony to the prejudice of the defendant.

I. The evidence of payment of taxes which accrued prior to October 28, 1857, was beyond the six years embraced in the inquiry and were properly excluded (*See Exhibits No.* 1 2 *and* 4, *pp.* 15, 16 *and* 18).

II. The "rates" paid for use of Croton water were not "taxes." They were paid for the use of an article consumed by defendant. He might as well have proved the amount paid for the use of ice.

*Ninth.* The defendant is not entitled to any favor from the court. He had no defense to the action. Yet he put in an answer to procure delay, and under oath asserted the plaintiff had released her dower. After the judgment he protracted the reference for a whole year in a matter that might have been, and was in fact, heard at last in six days.

The judgment, therefore, should be affirmed, with costs.

*Points on question of assignment of dower and of mesne profits.*

1. This is an equitable action for dower and mesne profits.

2. The prayer for relief is for assignment of dower and rents, and other relief legal and equitable, and costs.

3. The answer denies the cause of action.

4. The action was tried by the court without dissent (*Greason* agt. *Kettletas,* 17 *N. Y.* 498).

5. The plaintiff proved all the allegations in the complaint. Neither plaintiff or defendant called witnesses to enable the court to set out the plaintiff's dower by actual metes and bounds, or to adjudge what were the actual rents, and what the deductions for taxes, repairs, &c. The proof on this head only went to establish the fact that there were certain lands out of which the dower should be admeasured, and rents or value of possession from which rents could be estimated by an account of them, and the deductions to be made therefrom, and that plaintiff was entitled to have both ascertained according to the practice of the court in like cases.

6. The defendant abandoning the alleged defense to the

cause of action, and intending only to contest the *quantum* of dower and rents, offered no proofs whatever.

7. The court found in favor of the plaintiff upon all the *issues* embraced in the pleadings. The conclusions of law and fact determine every *issue* in the action, decide all the rights of the parties, and that the plaintiff is entitled to dower in specific lands, and rents thereof for a specific period; and settle the principles upon which the dower should be admeasured, and the rents apportioned and the account thereof taken.

8. The decision leaves no matter of detail unprovided for. It even adjudicates that, after the dower is set out, the defendant shall deliver possession thereof to the plaintiff " to be held and possessed by her during life," and likewise judgment for the rents when ascertained, and execution therefor, and that plaintiff shall have the costs of suit.

9. The judgment follows these findings of law and fact, and directs a reference to ascertain and report the dower and rents, and provides that when the report is confirmed such lands shall be deemed assigned to the plaintiff for life, and defendant shall give her possession, and defendant shall pay to plaintiff the rents and costs of suit, and she shall have execution to enforce the judgment.

10. The defendants acquiesced in this judgment and proceeded with the reference, and the referee's report has been filed and confirmed in all its parts.

11. Appeal is now taken more than one year afterwards from this judgment.

*First proposition.* If there was any " irregularity " in the judgment as respects the reference ordered in the judgment, it has been waived by the parties.

I. More than " a year " elapsed between the filing of the judgment and the giving the notice of appeal, or making this application (2 *R. S. p.* 359, § 2).

II. The parties have proceeded with the reference until it was completed, and the defendant has had the benefit of the delay. (*Forrest* agt. *Forrest,* 8 *Bosw.* 653, *and* 25 *N. Y. R.*

510; *Claflin* agt. *Farmers' and Citizens' Bank*, 25 *N. Y. R.* ·296.)

*Second proposition.* If there were any defect in the proceeding before the judge at special term, in matter of form, or in any respect other than touching power or jurisdiction, then, as neither party complains of it, and the "substantial rights" of neither party are affected thereby, the court must disregard it. (*Code*, § 176, *and* 2 *R. S. p.* 425, § 78; *Whitehead* agt. *Pecare*, 9 *How. P. R.* 35; *Bedford* agt. *Terhune*, 27 *How. P. R.* 422.)

*Third proposition.* The court can indulge in no presumption which will tend to invalidate the judgment. The party obtaining the judgment is entitled to every presumption necessary to sustain it. Numerous cases illustrate the extent of this clear rule of appellate courts. (*Otis* agt. *Spencer*, 16 *N. Y. R.* 611; *Viele* agt. *B. & T. R. R. Co.* 20 *N. Y. R.* 184; *Hoyt* agt. *Hoyt*, 8 *Bosw. R.* 521.)

I. "It is incumbent on the appellant to take care so to present the facts upon which the case depends as to show affirmatively that an error has been committed. The court will presume nothing in favor of the party alleging error." (*Carman* agt. *Pultz*, 21 *N. Y. R.* 551; *Lewis* agt. *Jones*, 13 *Abb. R.* 427; *Grant* agt. *Morse*, 22 *N. Y. R.* 323; *Heroy* agt. *Kerr*, 8 *Bosw.* 204; *Richardson* agt. *Dugan*, 8 *Bosw. R.* 212; *Lee Bank* agt. *Satterlee*, 17 *Abb. R.* 13.)

*Fourth proposition.* The judgment of the court at special term was final and complete in all respects.

I. It disposed of all the issues, and left no judicial function unexhausted in the justice who tried the cause.

II. The reference to admeasure the dower by metes and bounds and take the account of the rents, was merely a ministerial matter subject to the subsequent affirmance of the court.

III. The judgment was final, and became complete when the report was confirmed, and is identical in all its characteristics with those pronounced final and approved in form by this court, and the court of appeals. (*Swartwout* agt. *Curtis*, 4 *Comst.* 416; *Lawrence* agt. *Farmers' Loan and Ins. Co.* 15 *How.* 57)

IV. The same form of decree was usual in chancery proceedings before the Code. (*Mills* agt. *Hoag*, 7 *Paige R.* 18; *Johnson* agt. *Everett*, 9 *Paige R.* 639.)

V. The cases where the courts have held judgments incomplete, not final, and amounting to a mistrial, have been where the court failed to determine all the issues presented by the pleadings, and are wholly distinguishable from this case.

1 (A. D. 1856). In the case of *Buchanan* agt. *Cheesborough* (5 *Duer*, 238), BOSWORTH, HOFFMAN, WOODRUFF, justices; the trial was by jury, and a verdict taken for a nominal amount, subject to the opinion of the general term, and a reference to ascertain the amount, if the verdict was sustained. This was held an "irregularity." No judgment was entered. The court say, however, when the cause is tried before the court, "no such difficulty exists."

2 (A. D. 1857). In *Griffin* agt. *Cranston* (1 *Bosw.* 181), DUER, BOSWORTH and SLOSSON, Justices: The suit was to set aside an assignment. The issues were tried by the court. The judgment left undecided whether a partnership ceased at a particular date or not, and ordered a reference to take an account. BOSWORTH, Justice, says: "The court should have disposed at the trial absolutely of all questions of liability, and the reference should have directed only such details to be ascertained as were necessary to be known to carry the judgment into effect."

3. In *Same Case* (5 *Bosw. R.* 658), before all the justices; the court say, "the decree does not purport to determine all the matters in issue. A question upon which the result of the litigation may depend is reserved, until the coming in of the report," &c. "It is not a cause in which every question on which the rights of the parties depend, is decided." &c.

4 (A. D. 1860). In *O'Brien* agt. *Bowes* (4 *Bosw.* 657), the trial was of an equitable action before the court at special term. The case finds that "all the proofs were given by the parties respectively, which they desired to give, and they rested submitting the case to the court for its determination."

The court decided to .dismiss the complaint with costs, "unless the plaintiff applied for a trial of the questions of fact by jury, in which event the question of costs was reserved." The plaintiff then got an order for a trial by jury. The defendant appealed from the latter order, and all of the first except the dismissal of the complaint with costs. The court held in effect that the judge had tried and decided the cause, by dismissing the complaint, and was thereupon *functus officio*, and his condition and subsequent order were void, and only these were reversed. But the judgment was permitted to stand in other respects.

5 (A. D. 1862). In *Chamberlain* agt. *Dempsey* (14 *Abb. R. p*. 241), there was a trial before a single judge. He decided the cause, but did not determine the question of costs, or the amount due, or direct a reference to ascertain it. A reference was-ordered subsequently by another judge, without referring to this decision. The judgment was not entered upon the decision, but *ex parte* as upon failure to answer. It was all irregular and void.

6 (A. D. 1862). In the *Same Case*, BARBOUR, Justice, after a second trial before Justice MONCRIEF (15 *Abb. R. p* 1), decision was made for plaintiff, and a referenc ordered to compute the amount due, but the question of costs was not determined. Subsequently to the reference a judgment was ordered by Justice MONELL, differing from the decision of Justice MONCRIEF, and giving the plaintiff costs. This was likewise irregular and void, and the court so held.

VI. If this was not a final judgment, then it was merely an interlocutory order as respects the reference, and the appeal therefore, should be dismissed upon the notice served, because not taken within the thirty days allowed by law. (*Lawrence* agt. *Farmers' Loan and Trust Co*. 15 *How. Pr. R*. 57 ; *Cotes* agt. *Carroll,* 28 *How. Pr. R*. 436.)

*Fifth proposition*. The court, at special term, had power and authority in this case to direct a reference to set out this dower, and compute the amount due for *mesne* profits.

I. This is an equitable action to recover dower, &c.

II. By the constitution of this state, the legislature has

power " to alter and regulate proceedings in law and equity."
(*Constitution of N. Y. art.* 6 § 6, &c.; *Phillips* agt. *Gorham*,
17 *N. Y. R.* 272.)

III. By the judiciary act (of 1847, § 77), this court has
power given it to refer to a referee all matters formerly
referred to a master in chancery. (4 *Edmond's R. S.* 568,
§ 77 ; *Knickerbocker* agt. *Eggleston*, 3 *How. Pr. R.* 130.)

IV. This superior court has full chancery jurisdiction, and
the rules and principles governing courts of equity apply to
proceedings in equitable cases in this court (*Forrest.* agt.
*Forrest*, 8 *Bosw.* 656 *and* 25 *N. Y. R.* 510.)

V. By the Code (§ 468 *and* 469), all rights of action may
be prosecuted in the manner provided by it. In case an
action cannot be had under it, " the practice heretofore in
use," may be adopted so far as necessary. Where consistent
with it the former " rules and practice of the courts," in civil
actions, " continue in force subject to the power of the
respective courts to relax, modify or alter the same." So
also by the rules of court (*Rule* 93), where no provision is
made by statute, or the rules of court, the proceedings in
suits like this must be " according to the customary practice·
as it heretofore existed in the court of chancery."

By virtue of these provisions various ancient rules of
practice and modes of proceeding in law and equity have
been retained, both by the court of appeals and the inferior
courts ; and the prior practice is held to be " abolished only
in a qualified manner." (*Hastings* agt. *McKinley*, 8 *How.*
*Pr. R.* 175 ; *Averill* agt. *Patterson*, 10 *Id.* 87 ; *Mills* agt.
*Clark*, 2 *Bosw. R.* 711 ; *Palmer* agt. *Palmer*, 13 *How. Pr. R.*
364 ; *Bank of Genesee* agt. *Patchin*, 3 *Kern. R.* 314 ; *Wash.*
*Life Ins. Co.* agt. *Lawrence*, 28 *How. Pr. R.* 435.)

VI. Whether then we regard this as a case of reference
under the judgment to set out this dower, and to take the
account of these rents as specifically provided for by the
Code or not, there can be no question of the power of the
court in the premises to act, either under the Code or under
the former practice.

1. Every referee appointed under the authority of the

Code, has "generally the powers vested in a referee by law," before the Code (*Code*, § 421).

2. This reference seems to fall precisely within the provision of the Code (§ 271, *sub.* 2), for "carrying the judgment into effect." (*Elmore* agt. *Thomas*, 7 *Abb. R. p.* 72; *Ketchum* agt. *Clark*, 22 *Barb. R.* 319; *Forrest* agt. *Forrest*, 8 *Bosw. R.* 656; *Same* agt. *Same*, 25 *N. Y. R.* 510.)

3. But, if this be doubtful or erroneous, there can be no question of the propriety of this reference under the former equity practice. (*Swaine* agt. *Perrine*, 5 *Johns. Ch. R.* 482; *Townsend* agt. *Townsend*, 2 *Sandf. R.* 711.)

VII. The prayer of the complaint was for equitable relief. The court had power to grant "any relief consistent with the case made by the complaint and embraced within the issue" (*Code*, § 275). The judge tried and decided every isssue, and the reference was ordered merely as a customary mode of administering the relief to which the court adjudged the plaintiff to be entitled. The court decided the plaintiff entitled to dower and rents, and to a reference to ascertain the *quantum* thereof. The evidence adduced on the trial was insufficient, and was not intended to enable the court to determine this. There was no evidence as to *improvements* on the land, repairs or taxes. The case does not find, or purport to find, that the parties sought to have or could have had these matters determined on the trial. The proof concerning the same should have come from the defendants. They offered no proof whatever. A decision by the court as to the *quantum* of dower and rents on the evidence would have been impossible without great prejudice to the defendants. The reference was for their benefit. The court could not survey or set out the dower by metes and bounds. The reference was, therefore, necessary to prevent a failure of justice. Moreover, this court is bound to presume, if necessary, in order to sustain this judgment, as was the fact, that the parties designedly omitted to offer evidence as to these details, because they preferred to have the *quantum* of dower and rents ascertained by a reference ordered to carry the judgment into effect.

*By the court*, ROBERTSON, Ch. J. It was adjudged in this case that the plaintiff was entitled to dower in certain land at Harlem, in the city of New York, lying between Sixth and Seventh avenues, and running through from One Hundred and Twenty-fifth to One Hundred and Twenty-sixth street, being one hundred and fifty feet wide, by about two hundred deep; and also to one-third of the rents of such land (after certain deductions), from a certain day in the year 1855, to the present time, exclusive of any arising from improvements on such premises made since their alienation. Judgment was rendered that the part of such land which should be set out by a referee (who was thereby empowered to set the same out for such dower), should be assigned to the plaintiff for the same, and that the defendant and all claiming under him, should deliver possession thereof to her; and that the defendant should pay to the plaintiff one-third part of the rents and profits of such land for six years next preceding the entry of such judgment, to be ascertained by the same referee; costs and an execution were also awarded to the plaintiff. Upon the report of such referee, duly confirmed after exceptions heard, judgment has been entered and the roll filed, from which, and such confirmation, an appeal has been taken.

The cases of *Swartwout* agt. *Curtis* (4 *Comst.* 416), and *Lawrence* agt. *Farmers' Loan and Trust Co.* (15 *How.* 57), show such judgment to have been in proper form. It corresponds with forms of decrees formerly made in courts of chancery (*Mills* agt. *Hoag*, 7 *Paige R.* 18; *Johnson* agt. *Everett*, 9 *Id.* 639), and was not infected with any of the vices of the judgments in *Buchanan* agt. *Cheesborough* (15 *Duer*, 238); *Griffin* agt. *Cranston* (1 *Bosw.* 181, *S. C.* 5 *Bosw.* 658); *O'Brien* agt. *Bowes* (4 *Bosw.* 657), and *Chamberlain* agt. *Dempsey* (14 *Abb. Pr. R.* 241, *S. C.* 15 *Abb. Pr. R.* 1.) In the first of those cases (*Buchanan* agt. *Cheesborough*) a conditional reference was ordered to ascertain an amount due, *after* the general term should pass upon the liability of the defendant, a general *pro forma* verdict having been taken against him. In the second (*Griffin* agt. *Cranston*), the first

judgment (1 *Bosw.*) left a material issue of the time of cessation of a certain partnership undisposed of, and the second judgment did not purport to determine *all the matters in issue.* In the third (*O'Brien* agt. *Bowes*), a condition attached to a judgment of dismissal of the complaint, that the plaintiff was not to apply for a trial of the question of fact by a jury, was held to be repugnant, and rejected as surplusage. In the last (*Chamberlain* agt. *Dempsey*), the amount due on the mortgage sought to be foreclosed, was not determined on the first trial, but on an order of reference made by a different judge, and on a second trial, a judgment, without disposing of the question of costs was given and a reference ordered, on which a different judgment was afterwards rendered.

The present action is certainly sustainable as one in a court of equity for the admeasurement of dower, over which such courts always had jurisdiction concurrently with courts of law. (1 *Story's Eq. Juris.* §§ 624 *to* 632; *Badgley* agt. *Bruce*, 4 *Paige*, 98; *Townsend* agt. *Townsend*, 2 *Sandf. S. C. R.* 711.) If it be also an action of ejectment for the recovery of dower, there is no difficulty in the junction of the two. Indeed courts of equity have always administered other equities in conjunction with such admeasurement (*Swaine* agt. *Perrine*, 5 *Johns. Ch. R.* 482; *Bell* agt. *Mayor, &c. of New York*, 10 *Paige*, 49), and seem the more appropriate, and even exclusive tribunals in some cases of the kind. (*Van Dyne* agt. *Thayer*, 19 *Wend.* 162; *Cooper* agt. *Whitney*, 3 *Hill*, 95; *Baker* agt. *Chase*, 6 *Id.* 482; *Runyon* agt. *Stewart*, 12 *Barb.* 537.) The facilities for taking an account, in a court of equity, of the rents and profits, would seem to render an action of an equitable character, or in a court of equity, most proper. But all the boundaries of jurisdiction and distinctions between causes of action as legal or equitable being removed, there seems no reason why all the relief to which the plaintiff is entitled, should not be given in one action. Indeed, a court of equity when it has gained jurisdiction for one purpose, may retain it for other purposes, although they alone would not have constituted a

primary ground of equity jurisdiction. The objection is therefore not one of jurisdiction, but of misjoinder of causes of action, and has been waived by not being taken by answer or demurrer. (*Code*, §§ 144, 148; *Bank of Utica* agt. *City of Utica*, 4 *Paige*, 399; *Ludlow* agt. *Simond*, 2 *Cai. C.* 156; *Truscott* agt. *King*, 6 *N. Y. R.* 147.)

But, although the action may be fairly in this court, and no objection has been made to an adjudication in it upon all the issues involved, it is said such court cannot use a referee to admeasure the plaintiff's dower, and assess her damages by loss of rents and profits, instead of the three *freeholders* formerly required in an action of ejectment for dower (2 *R. S.* 312, § 48, *sub.* 1; *Id. p.* 310, §§ 36 *to* 47), or a special petition (*Id.* 489, § 10).

The appointment of such freeholders under such statute, was clearly only a mode of supplying the defects of the machinery of a court of law, after giving judgment, in carrying it out, and to save the necessity of a new action or proceeding. Now, however, the only ordinary proceeding in a court to enforce or protect a right, or to prevent a wrong, is in the most general terms an "action (*Code*, § 2). It can have but one form (*Code*, § 69). Every distinction between actions at law and suits in equity, and their forms, is abolished (*Id*). Every court, therefore, whether exercising legal or equitable jurisdiction in such proceeding, now possesses the former powers of both courts of law and equity to investigate disputed questions by every mode peculiar to either, and to make its judgment as to the rights of parties effectual.

The Code expressly declares, that " all rights of action given or secured by existing laws, may be prosecuted in the manner provided by it " (§ 468). Every court has power, where an answer is put in to grant relief consistent with the *case* made by the complaint and embraced within the issue (*Id.* § 275). The court in this action had power, therefore, to admeasure and enforce the plaintiff's right of dower, if it determined that she had any under the case made. What part of the land the plaintiff was entitled to, as dower, as

well as the amount due her for her share of the profits with-
held, were specific questions of fact involved in the issue
made by the pleadings, and were therefore proper subjects.
of reference, and their determination was necessary to carry
the judgment into effect (*Code*, § 254). There surely could
be no doubt of the power of the court in such an action to
admeasure the dower *itself*, if it had sufficient materials
before it, after acquiring jurisdiction over the subject. If
so, it could transfer the inquiry to a referee to aid in ascer-
taining it. The defendant waived every objection, except a
want of jurisdiction, and even a right of appeal from the
order of reference, by litigating before the referee without
such appeal, and by filing exceptions to the report. (*Caines*
agt. *Wyckoff*, 1 *Cai. R.* 147; *Forrest* agt. *Forrest*, 8 *Bosw.*
653; *S. C.* 25 *N. Y. R.* 510; *Claflin* agt. *Farmers' and Citi-
zens' Bank, Id.* 296). On appeal also, such an error in the
proceeding as admeasuring the dower by one referee instead
of three (as it does not appear that he was *not* a freeholder),
should be disregarded, as not affecting the substantial rights
of the defendant (*Code*, § 176).

The plaintiff of course was only entitled to one-third
of the land according to its value at the time of its aliena-
tion in 1854 to the defendant, under the statute of 1806 (1
*R. L.* 1813, 60, § 1), and the Revised Statutes (1 *R. S.* 740,
§ 1; *Id.* 742, § 17; 2 *Id.* 490, § 13), and was not to be
allowed for any increase in value since (*Walker* agt. *Schuy-
ler*, 10 *Wend.* 481), or any improvements (*Coates* agt. *Cheever*,
1 *Cow.* 460).

No evidence was given of any change in its value to the
time of the inquiry before the referee, or of any improve-
ments put upon the premises, except upon the; house exclu-
sive of the improvements, the house could hardly have been
worth as much at the time of the trial as at that of the
alienation. Omitting the house, the relative, value of the
lots remaining, to those assigned to the plaintiff, must most
probably have continued the same between those dates. The
use of the house at its present valuation, including the costs
of improvements made by the defendant thereon, was

assigned to make up the value of the one-third of the premises, exclusive of the valuation of the improvements on the house, assigned to her for dower. There is no rule of law forbidding absolutely the assignment of such improvements as part of the dower, provided they are not taken into account in admeasuring the dower, although, if an assignment be otherwise practicable, they are not to be included (2 *R. S.* 490, § 13, *sub.* 2; *Coates* agt. *Cheever*, 1 *Cow.* 460; *Bell* agt. *Mayor, &c. of New York*, 10 *Paige*, 42, 72) ; such improvements could not well be separated from the house. The propriety of the exercise of the discretion of the referee in that respect, was passed upon by the judge at special term, and his decision should not be disturbed (*Forrest* agt. *Forrest, ubi sup*). The other provision of the same statute (2 *R. S.* 490, § 13, *sub.* 2), was complied with by deducting from the lands allotted for dower, the value of the improvements.

Taxes before the six years to which the inquiry was limited, being before October, 1857, were properly excluded, as was the rate paid for the use of Croton water by the defendant. Any amount paid for *ornamental work* or repairs to the additions or improvements was properly excluded. There was no evidence that the defendant insured the plaintiff's interest in the premises, or anything more than his own, whether he or she could have recovered, if he had so insured, is doubtful (*De Longueman agt. Trademens' Ins. Co.* 2 *Hall*, 539) : he was not entitled, therefore, to any premiums of insurance paid, unless shown to have been for the plaintiff's benefit. No errors of fact have been shown to have been committed by the referee.

The judgment and order confirming the report must, therefore, be affirmed, with costs.