Judge Marshall
delivered the Opinion of the Court.
Judge Ewing had not taken his seat when this cause was heard, and took no part in the decision.
In 1786, Christopher Irvine was killed by the Indians, leaving a widow, and David C. Irvine, his heir at law. The widow afterwards intermarried with Richard Hickman. In the year 1790, under a decree of the Court of Quarter Sessions of Madison county, dower was assigned to her, by commissioners, in two tracts of land in the same county: viz: the “Station tract” and the “Lick tract,” of which her first husband died siezed. But the report of the commissioners, was never approved or otherwise acted on by the Court. Under this assignment, with the acquiescence of the guardian of David C! Irvine, and afterwards of David C. Irvine himself, ifickman and wife leased out? the dower land to various tenants, until, in the year 1807, the dower in the “ Station tract,” was leased by Hickman, to David C. Irvine himself, for the annual rent of fifty-five dollars, to be paid during the life of Mrs. Hickman, and to commence on the first of January, 1809. In 1817, the dower in the “ Lick tract” was leased, by parol, for the same term, and at the same annual rent. Under these leases, Irvine took possession of the dower land in each of the tracts, and retained the possession, paying the stipulated rent annually, up to the first of January, 1820; about which time he died, leaving his widow and children in possession.
In 1828, Hickman and wife filed their bill in Chancery, against the executors and heirs of David C. Irvine; in which, and in an amended bill afterwards filed, they allege, in addition to the above facts, that since the death of David C. Irvine, his representatives, although enjoys *122 ing the said lands, by themselves or their tenants, have refused to pay to the complainants any rents therefor, or to let them into the possession; that they deny their right to the dower assigned to them, and refuse to allow any dower, or compensation for dower, in the lands of Christopher Irvine, deceased; whereupon they suggest, that, in consequence of the informality of the original assignment of dower, there should be a new assignment, with an account of back rents, or that the defendants be compelled to permit Mrs. Hickman to enjoy the dower already assigned, and also to pay her the back rents. And they pray for general relief.
Bill dismissed, below
Dower is not of the improved lands only: the widow is to be endowed of i of all the lands of which the husband was seized during the coverture,
The heirs of David C. Irvine, being infants, answer by their guardian ad litem, in the usual form.
The executor makes his answer a cross bill — alleging that, the complainants, by permitting their tenants on the dower land to clear additional land, and to build houses thereon, and by selling and destroying timber, had forfeited the dower estate, and that the rents received by them, including the quantity so cleared, had exceeded their just proportion, &c.
In answer to this cross bill, the complainants deny an}» unnecessary destruction of timber, and any forfeiture or just cause of forfeiture, and rely upon the acquiescence of David C. Irvine in whatever had been done upon the dower land, and upon the terms and effect of the contracts by which he acquired possession of them.
During the progress of the suit, Richard Hickman died, and the suit was revived and carried on by his executor in conjunction with Mrs. Hickman.
On final hearing, the bill was dismissed, without prejudice to any action at law by the complainants, or either of them.
In considering the propriety of this decree, we cannot concede that a widow is entitled to dower in the improved lands only of her deceased husband. She is, by the general provision of the common and statute law, to be endowed of one equal third part of all the lands of which he was seized during the coverture; and to whatever extent the doctrine of forfeiture for waste may ap *123 ply to the case of a dowress'’w-fi<i reduces forest lands to a state of cultivation, yie caiirioO'iew this doctrine, and the possibility thatJg','application may render a portion of the dower land^Eéless f^the’widow, as a limitation either upon the qutmtty oc quality of the land to be assigned as dower. jh
Suggestions relative to the question — not requiring- a decision now, — whether clearing wood lands will be waste, for which a widow will forfeit her dower.
A 2nd husband rents his wife’s dower lands to the reversion-er, who takes possession under his lease: — held, that any claim he may have had to the immediate possession, because of waste committed, and consequent forfeiture, is waived and extinguished by that contract • — made with a knowledge of all the facts; and that his representatives are also bound by bis acts in that respect.
When a case shaljbOpf^m which the lands assigned for dower cannot' bejirf^pjll available for the reasonable support of the widow, without converting a portion of the wood laruDto' the purposes of cultivation, and in which, upon sgpattempt being made thus to render it available, thMIversioner shall insist upon a forfeiture, it must d®ded upon consideration of the object of the law m^tablishing the right of dower, upon a comparison of its regard for the present comfortable sustenance of the widow, with its care for the preservation of the inheritance, and upon a view of the actual condition of the estate, and of the surrounding country, with regard to improvement and population, whether the change of timbered into arable land is, in the particular case, such an act of waste as would be just cause of forfeiture.
This question, though suggested in the pleadings and argument on the part of the defendant, need not be decided in the case now before the Court, since whatever acts in the nature of waste may have been committed by the dowress, or under her authority, were not only acquiesced in by the heir, with full knowledge of the facts, but all claim of forfeiture on account of them, was merged and extinguished, by his subsequently gaining possession of the land, under contract with the husband of the dowress, and on terms wholly inconsistent with the idea of enforcing a forfeiture for any thing which had been done. It is quite possible that David C. Irvine, the heir, may not have considered the additional improvements made upon the dower land, as any injury to the inheritance; but if he did, and if they amounted to cause of forfeiture, he, being entitled to the reversion in fee after the termination of the dower estate, and having the whole inheritance in himself, had a perfect right to waive any forfeiture, and to compound for any injury to *124 his estate; and his representatives, as well as himself, are concluded by his acts having that effect. The question of forfeiture, therefore, for waste, alleged to have been committed before David C. Irvine came into possession of the dower lands, cannot, in our opinion be successfully raised, either by his heirs or^xecutors.
An assignment of dower was made by commissioners, duly appointed; but the court never confirmed 0 r acted upon their report; the widow (or her second husband) took possession of the land so assigned; the heir the land, at certain rent, from the husband: — held, that this assignment of dow erwas effectual, altho’ the report was not confirmed; # that the representatives of the heir were bound for the rent, during the continuance of the lease. Nor can any new assignment be allowed, for the want of confirmation of the report. acquiesced, and took a lease of
Nor can they resist the demand' of the complainants for rent, or for possession of#. file dower lands, on the ground that the assignment of* dower made by the commissioners, in 1790, had not been approved by the Court under whose order it was made. If that assignment, as a judicial act, were pronounced to be incomplete, still, as an act in pais, it was complete. Dower was in fact allotted by metes and bounds; the dowress entered upon and enjoyed it for many years. And the heir, whose dower, if it had not been al- . . , duty it was to assign her assignment ac-ready done, not only acquiesced in the tually made, for many years after he arrived at full age, but by the contracts of lease, under which he acquired possession of the land, admitted the title of the dowress, and the validity of the allotment, of which the justice is not questioned to this day. Under these circumstances, the assignment referred to, is, in our opinion, to be regarded as valid for all purposes, both at law and in equity, and especially as against David C. Irvine, his representatives, and all persons claiming under him.
We are of opinion that Hickman and wife, when their bill was filed were also bound by the assignment of 1790, and could not claim a new assignment merely on account of the supposed incompleteness of that originally made. Their prayer for a new assignment, which was only in the alternative, seems indeed to have been little regarded on their part, and as there is no ground for making it, the bill is to be considered as standing upon the prayer to be let into the possession of the dower land previously allotted to them, and to have an account and payment of back rents. It does not pray for further confirmation or completion of the former assignment, nor was any further act necessary for perfecting it, under the circumstances of the case.
The husband of a dowress is entitled to therents of the dower lands, during his life; which he may recover at law, not in chancery, unless peculiar circumstan ces give the jurisdiction.
Upon the death of the husband of a dowress, the use #c of the lands of a former husband, of which she was endowed, revert to her; and tho’ chancery has undoubted jurisdiction to assign dower, #• decree payment of the back rents fyc— the remedy for the rents accrued after the assignment, or to regain the posses sion, is purely legal, and of which chancery has no jurisdiction.
Hickman was doubtless entitled tb the rents, or annual value, of both the dower tracts, during his life. He could have recovered all that remained unpaid upon the written lease, and the reasonable annual value, for at least five years, of the land which had been leased by parol. But as his demand for rents, as well as for possession of the land, if he was entitled to possession of any part of it, was purely legal, he should have pursued it at law, unless there was some obstacle, which the Chancellor alone could remove, or some peculiar circumstance, on .the ground of which, a Court of Equity might take jurisdiction. But we percieve nothing of this sort in the case, and are therefore of opinion, that as the suit stood during his life, the Court of Chancery had no jurisdiction.
Upon his death, however, Mrs. Hickman, being no longer bound by his contracts in relation to the dower, was entitled to demand the possession, and the issues of the land from that time, and if the Court of Chancery had jurisdiction to enforce this demand, relief should, to this extent at least, have been afforded by the decree. But although the jurisdiction of the Chancellor to assign dower, and when he does that, to decree possession and rents, cannot at this day be doubted, we know of no case in which after dower has been assigned, and in possession of the dowress, the Chancellor has interfered, merely to restore the possession. Nor would such an interference, unless required by some extraordinary circum? stance, be proper on principle. Her right to the possession and to the rent, was, like that of Hickman, purely legal; no interposition of the Chancellor was necessary to give it effect; and although, if the suit had been properly brought in Chancery, the demand for rents unpaid at his death, might have survived to her, that circumstance alone cannot authorize the assumption of jurisdiction in a case the cognizance of which would otherwise belong exclusively to a Court of Law.
The decree of the Circuit Court, dismissing the bill, without prejudice to the remedy at law, was proper, and must be affirmed.