## DOWER IN THE PRODUCT OF OIL WELLS.

[Circuit Court of Wood County.]

CASSA M. WILLFORD v. JOHN B. HEIMHOFFER ET AL.

Decided, March 26, 1903.

*Dower—In the Production of Oil Wells—Sunk After the Death of the Husband—Right of the Doweress in Oil from Land Assigned to Her—Partition of the Lands—Effect of Provision Depriving Doweress of Interest in the Oil.*

1. A doweress has the same rights in oil wells sunk upon the lands of her husband after his death that she has in wells sunk before his death; and where the rents and profits of a tract of land are assigned to her, the oil production from that land is clearly hers.

2. An order made in the probate court, upon confirmation in partition proceedings, which deprives the doweress of her rights in oil produced from a tract of land assigned to her in such proceedings is *coram non judice* and void, and is not a bar to her right to recover.

HAYNES, P. J. (orally); HULL, J., and PARKER, J., concur.

Appeal from common pleas court.

This case is in this court on appeal. The plaintiff in her cause of action against the defendants says she is the widow of Lewis D. Willford, who died seized of forty acres of land in Wood county, and the detailed description is given. She says she held the premises as tenant in common with the heirs at law of said Lewis D. Willford until the 3d day of September, 1895, when such proceedings were had in the probate court of the county, that a decree of partition was entered by said court and the premises ordered sold subject to her dower interest therein; that the commissioners appointed by the court to appraise said premises and assign to plaintiff her dower, did assign to her the rents and profits, for her natural life, of ten acres (which are described). That the premises were then sold on the 3d day of September, 1895, subject to plaintiff's dower interest therein, to one John B. Heimhoffer, who is still the owner thereof. She says that on September 19, 1894, she, and all the heirs at law of said Lewis D. Willford, executed and delivered to Frederick G. Moon an oil lease on said premises, and that

Moon and his assigns have and are producing oil on the premises up to the present time. That on December 25, 1895, Dorr R. Willford and Charles H. Willford, two of the heirs, sold and assigned to the defendant, Margaret O'Brien, their undivided fourth interest of the one-sixth royalty in the oil produced on the premises, and that the said Margaret O'Brien remained in possession and received her share of the oil produced until July 20, 1898, when she sold her interest to some parties named Smith, who were doing business as The Huron Oil Company, and that they received their share of the oil until the 1st of September, 1899. She says she made due demand of Heimhoffer for an accounting of the oil produced on the premises, and that he refused to account. She says the defendants have remained in possession of the ten acres set off to her as dower since the 3d of September, 1895, and have continued to operate and produce oil therefrom, and that no part of the product has been accounted for or turned over to her; that she is unable to state the amount of oil produced from the property, or to state the amount of money, if any, paid out by the defendants in their operation of the lease. She says the defendants are held and are liable to account to her for all the oil produced on the ten acres so assigned to her, after the 3d of September, 1895, to the present time; and she says the defendants have operated said leasehold in such a manner as to completely destroy her income therefrom. She asks for a complete accounting of all the oil received and the money expended in the operation of the lease, and that upon the hearing of this cause that the defendants be required by proper decree of this court to account for and turn over to her all the oil produced on the said ten acres in September 3, 1895, after deducting the actual expenditures for lease operations; that the defendants be required to transfer said royalty to plaintiff, and that they be decreed to have no further interest therein during her life-time.

Answers were filed by the defendants, they relying, in substance, upon the fact that the dower of the plaintiff was assigned to her, subject to the said oil lease and that the one-fourth of the oil royalty in the whole of said lands, including the portion so set off to plaintiff as her dower, was ordered by the probate

court in the partition proceedings referred to. The plaintiff filed replies to these answers denying the allegations of new matter, and alleging that the petition and all the other pleadings filed in the partition proceedings fully set forth and recognized the dower interest and rights of plaintiff therein; that no issue was raised in any of the pleadings in any manner disputing plaintiff's rights; that it was unnecessary for her to answer therein, and she did not file any answer. That prior to the filing of the petition for partition she had received a portion of the royalty by an amicable partition made thereof between the other parties who joined with this plaintiff in the execution of said lease, and that under said amicable partition she had received and was entitled to one-fifth of all the royalty from all the oil produced from the forty acres, and this division of the royalty was recognized by the averments contained in the petition; that when her dower was assigned to her she believed and relied upon the same carrying with it all the royalty produced therefrom upon the part so assigned to her in lieu of the one-fifth she had thertofore received from the whole tract; that when the commissioners assigned her dower they set apart to her the ten acres in question for the reason that there were two wells thereon that she might receive the royalty therefrom, and that said ten acres was and has been and had to be so occupied and used by oil wells and the carrying on of oil operations thereon as to render the same utterly useless for any other purpose; and then she denies that she ever transferred or authorized the transfer of her right to the royalty share of the oil produced from the ten acre tract to the defendants, and that the probate court has no authority or jurisdiction to make any such order or decree in that regard.

The case was heard upon an agreement as to the facts and some testimony, and it appears that some years ago one Lewis D. Willford died in this county seized of the real estate described, and that he left a widow, the plaintiff herein, and certain heirs at law who were of age. The heirs at law and the widow joined in and executed an oil lease on the forty acres to a certain party, and subsequently the land was partitioned. The lease was in the ordinary form and provided for the sink-

ing of four wells on the land.  These wells were sunk and were productive, and at the time the assignment of dower was made in the partition case, ten acres of this land were assigned to the widow which had upon it two of these four wells.  It was a general assignment of dower of that ten acres and that assignment was confirmed by the court, and after the confirmation, or at the time of the confirmation, there was an order made by the court in a journal entry in regard to the two wells on this ten acres of ground, practically providing that the widow should not have the two oil wells, but the land alone.  Now the widow in her petition in this case claims the oil that has been taken from the land since the time of the assignment of dower.  At the time of the execution of the original lease the power was given to one of the sons to draw the proceeds of the oil wells, and act as agent of all these parties, including the plaintiff. Subsequently he transferred that power to others, and it passed down through one to another until I think the last party was John B. Heimhoffer.

It is contended that by the assignment of dower, the widow has no right to the oil.  In some cases she would have the right to the product of the oil if the wells had been sunk prior to the death of her husband.  It is further claimed that this order that was made in this journal entry was conclusive upon her right to the use of these wells and the product thereof, and that she is barred by the judgment that was rendered in that case.

Now very briefly on this point: The dower question in this country is like a good many other questions; it is growing and expanding.  The time was when a woman's dower was thought about as little of as she was—which was little enough.  In the case of *Crockel* v. *Crocket*, in 2d Ohio St., page 181, there is some discussion of the question of dower, and Judge Thurman in that case stated, upon the question of the right of the widow to cut timber, how extensively the widow might cut timber.

The rule had been very rigid in ancient times.  He says:

"That a widow is dowable of wild lands in Ohio has long been well settled; that she is bound to pay the taxes upon the lands when assigned to her for dower, and that the failure to do so may result in a forfeiture of her estate, is expressly

provided by statute. It follows, in our judgment, that she may by the sale of timber raise money to pay taxes; otherwise the estate would be a burden instead of a benefit to her. * * * It is well settled that many things may be done by a tenant for life here that if done in England would be waste; as for instance, the conversion of meadow or pasture into plowland, or woodland into a farm, etc. And it is also settled here that timber cut in improving the land belongs to the tenant for life and not to the reversioner. We are also of the opinion that where, as in the present case, the dower assigned consists of certain wholly unimproved and unproductive town-lots and a tract of woodland, the assignment is to be considered so far as an entirety as to authorize the sale of timber to pay the taxes on the lots as well as on the land. But we think the right to sell goes yet further," etc.

It will be noticed that in this case they recognize the right to change woodland into farmland, and giving to the widow the timber itself, a thing that would startle an old-fashioned Englishman out of his grave.

There is a very instructive case in the 52 N. W. Rep., page 299, *Seager* v. *McCabe*. In that case a man had died leaving a widow, and had died possessed of certain lands in northern Michigan. You know that up there, there is nothing but rock and occasionally a tree that has to fight for its life pretty hard; but it turned out that this land was valuable for its minerals, though it was not worth anything as land to cultivate. The Supreme Court of Michigan takes up the question of dower, and discusses all these authorities that I have seen and heard cited, and they go through the whole matter very thoroughly. They hold that the widow is entitled to be endowed with the land and the contents of the land—the proceeds of it, and they give her dower in that land and in the minerals in it. The syllabus is:

"Under Howell's Statutes, Section 5733, giving to the widow of every deceased person the use during her natural life of one-third of all the lands whereof her husband was seized of an estate of inheritance at any time during the marriage, a grant of dower in lands of her deceased husband, valuable solely as mineral lands, includes their use, and entitles her to her share of the proceeds of mining leases thereof, whether the mines were opened before or after the husband's death."

That is a wholesome doctrine and ought to be the doctrine in this country.  If a wife helps a husband to accumulate property and get a farm, we see no reason why she ought not to have her share of the products of that land, whether it is from the surface, which may be very light, or from mines or mineral production under it which may be brought to the surface.  However it is unnecessary to go to that length in the decision here.  I will state in our judgment, the heirs having united in making this lease and providing for the production of the oil, and arranging as they did that it should be drawn as it was, that all this becomes a binding obligation, and whoever undertakes to take the assignment of that lease or of the products of the lease would be bound by the arrangement that had been made.  In other words, we think that it was sufficient to give her a right to the use of the wells that may be sunk on the land—that were afterwards sunk—as dower, and it would be her's as rightfully as it would have been if the wells had been opened prior to the death of the husband.  Now the ten acres having been assigned to her, we conclude that she had a right to the proceeds of these wells clearly, unless she has been barred by something that has been done since that time.  The paper she signed, turning the property over to one son, was simply to make him an agent. He was an agent of these other parties.  Nowhere is it shown that she had consented that the money might be turned over to anybody else than herself.  It is true that she waited for some time, and the matter had been going on for three or four years, but she is an old lady, and perhaps was not very well advised as to her rights, and probably of not very strong executive ability, and she probably did not get stirred up sufficiently.

Now as regards this decree, I will read from the case of *Spoors* v. *Coen*, 44 Ohio St., page 497.  In that case a petition was filed in the probate court to sell property to pay debts, and it appeared that Spoors had at some time conveyed the property to another Spoors, and it was claimed that he was old and infirm and was not competent to do that; that Spoors had conveyed to the widow two acres of land.  The petition in that case set up that the widow was alive and was entitled to dower, and counsel for plaintiff filed on her behalf a waiver of her dower by

metes and bounds, and consented to take it in money. The petition nowhere set up that there was any fraud as to her, or was any claim made as to her property other than she was entitled to dower interest in the land, and when they took a decree in the case, they decreed that her land should be sold; practically took it out from under her. The court say:

"But, had the probate court the same jurisdiction in such matters as the common pleas, it would avail nothing in this case, for the reason that no such jurisdiction was invoked by the petition of the administrators against Rhoda Spoors. There is no averment in the petition that any land had been fraudulently conveyed, mediately, or immediately to her. The only averment as to her is, that she is entitled to dower in the lands, for which an order of sale is asked; and the only relief asked as to her is that her dower may be set off and assigned therein. And, in the answer filed for her by the attorney of the administrator, she simply waives an assignment of dower in the lands and elects to take the same in money. It is by no means intended to question or impair the principle that when jurisdiction has been obtained over the subject matter of a cause, by a court competent to exercise it, its judgment, however erroneous, can not be questioned in a collateral proceeding. A judgment so rendered can only be set aside or questioned in a direct proceeding instituted for that purpose. This is familiar law (Freeman on Judgments, Section 135). But a judgment rendered by a court of competent jurisdiction in a case brought before it, however erroneously the jurisdiction may have been exercised, is one thing, and a judgment entered by a court of like jurisdiction in a case not before it, is another and different thing. In one case its judgment may be erroneous, in the other it is void. To bring a cause before a court competent to adjudicate it, it is not only necessary that the parties should be in jus vocatio, cited and summoned in manner required by the law of procedure, but a case must also be made, or stated affecting the party against whom relief is asked;"

and then, after discussing the case, they held this judgment was void.

We think that authority is still in binding force in the state of Ohio, and we think it clearly disposes of this question. It appears that this suit was brought for partition, and there never was a word said in it in regard to the right of this old lady to an interest in this lease, and an order for partition was

taken in the ordinary course, and the commissioners make the partition, the sheriff returning it, in which they set off in the usual and ordinary way ten acres of land, and then afterwards when the matter is confirmed, they undertake to make such disposition of it as will deprive her of her rights in the oil in this ten acres. We hold that this is *coram non judice*, and is void, and is not a bar to this woman's right to recover.

We hold that she is entitled to the product of these wells, and that she is not barred or estopped by this alleged judgment, and a decree may be taken in her favor.

*James E. Wert* and *Baldwin & Harrington*, for plaintiff.

*James O. Troup*, for defendants.