## INTEREST OF LIFE TENANT IN OIL OR GAS PRODUCTION.

Common Pleas Court of Knox County.

JOSEPH S. BREECE ET AL, EXECUTORS, v. ELIZABETH BREECE ET AL.

Decided, April, 1909.

*Life Estate—Includes Royalties from Land, When—Lease for Oil and Gas Executed by Testator—Wells Drilled after His Death—Presumption as to Testator's Intention—Privilege of Life Tenant to Work Mines, Quarries, etc.*

When a life estate is created in land under lease to a gas and oil company, the life tenant takes the land with the right to all royalties from wells thereon, whether such wells were drilled before or after the death of the testator.

*William H. Thompson,* for plaintiffs.

WICKHAM, J.

On the 23d day of February, 1901, Adam G. Breece, a resident of Knox county, Ohio, made his last will. By this will the testator devised to his wife, Elizabeth Breece, a life estate in the farm of 121 acres owned by him in fee simple, with the remainder to his son, Cassie Breece.

On March 25, 1902, the testator executed and delivered to one P. Parker, and his assigns, an oil and gas lease on the 121 acres, by the terms of which lease he granted all the oil, gas, etc., for the term of twenty years, and so long thereafter as oil or gas is found in paying quantities thereon. Afterwards, and before the death of Adam G. Breece, Parker assigned the lease to the Ohio Fuel Supply Company, a corporation organized for the purpose and engaged in the business of producing and marketing natural gas. The lease provided for the payment of $200 per year for each gas well drilled on the land.

On May 20, 1904, Adam G. Breece died, leaving his said will in full force and effect, and seized in fee simple of the land bequeathed in said will to his wife, Elizabeth, for her life, with the remainder to his son, Cassie.

After the death of the testator the gas company drilled a well on the farm of 121 acres, in which the widow, Elizabeth, has a life estate, and which well ever since it was drilled in has been a producer of natural gas in paying quantities, and the gas company has paid a royalty of $200 per year to the executors of the last will of Adam G. Breece.

This petition is filed by the executors under the statute for a direction of the court, where the money now in their hands and received by them from the gas company should be paid, whether to the widow, Elizabeth, or to the remainderman, Cassie, and the case is submitted to the court on a statement of the foregoing facts.

The owner of a life estate in lands can not drill oil or gas wells nor open mines upon the land, nor can he grant the right to another to do so. *Kenton Gas & Electric Co.* v. *Dorney,* 17 C. C., 101-5; also *Marshall* v. *Mellon,* 179 Pa. St., 371; s. c., 35 L. R. A., 816; *Gurkin* v. *Kentucky Salt Co.,* 100 Ky., 734.

But a life tenant may operate oil wells or mines that have been opened before the creation of the life estate or the death of the testator, where the life estate is created by law, and take the royalty, rentals and profits therefrom. *Brooks* v. *Hanna,* 19 C. C., 216; *Lemfer* v. *Henke,* 73 Ill., 405; *Privy* v. *Griffith,* 150 Ill., 506; *Moore* v. *Rollins,* 45 Me., 493; *Kier* v. *Peterson,* 41 Pa. St., 361; *Shoemaker's Appeal,* 106 Pa. St., 392.

In the case of *Koen* v. *Bartlett,* 41 W. Va., 559; s. c., 35 L. R. A., 128, and in the case of the *Woodburn Estate,* 138 Pa. St., 606, it is held that where oil wells had been drilled in the testator's lifetime under a lease, and one was being drilled when he died, that the life tenant was entitled to the royalties under the lease.

On a review of these authorities the Circuit Court of Cuyahoga County, in the case of *Brooks* v. *Hanna, supra,* was moved to say, at page 218:

"The Pennsylvania cases are cases where the one taking the income was given a life estate, the remainderman taking what what was left at the end of the life estate. And those cases follow the law as laid down by all the authorities, that where mines are opened at the time that the will takes effect, the life tenant gets the right to work the mines during the time of her life estate; and the same is true of quarries, and beds of gravel and of clay, and if the will by which the life estate is created provides that mines are to be opened by the trustees and worked, the life tenant is to have the profits arising from the working of the mines, and the remainderman only gets such coal or other materials as is not worked out during the life estate. The principle on which this is held in the Pennsylvania cases we apprehend is this: That if a mine is opened at the time of the death of the testator and in operation, that the clear intent of the testator is that they shall continue to be worked; and if he provides in his will that they are to be opened and worked, then that is an appropriation by him in his will that so much of the coal or other material beneath the surface as shall be worked during the time of the life estate shall go to the life tenant so far as there shall be net earnings from such mine. And, in such cases, the will in and or itself gives to the life tenant the profits of the mine, and gives to the remainderman only what is left at the death of the life tenant."

It may, with equal reason and force be said, that where the owner of land in fee simple has executed a lease and granted the right to operate for oil and gas on lands which he has devised to his wife for life, or which he may afterward devise to her for life, it is his intention that the terms of his contract of lease be carried out after his decease and the rentals and royalties to be paid under the lease shall be paid to his wife, who is to be the life tenant of the lands after his death.

The testator has made a contract which in contemplation of law may be carried into effect after his decease. He is presumed to have that knowledge, and in case of his death before the termination of the contract it must be presumed that he intends all that legally results from his act of executing the contract. The lessee has a right to drill and operate the lands for oil and gas. The rental or royalties must be paid by the lessee to the owner of the lands, and the owner of the lands is the owner of the life estate, and it is he who is entitled to such royalties and rents.

There is no difference in the rights of the parties whether the wells are drilled before or after the creation of the life estate. If they are drilled after the life estate begins, under a contractual right which arose before the creation of the life estate, it is to all intents and for all purposes the same as if the wells were drilled in the lifetime of the testator. Or, to put it in another form, the life tenant takes the land with the right to the royalties of all wells drilled on the land at the time it is taken, and all wells that may be drilled on the land under the contract existing at the death of the testator. *Seager* v. *McCabe,* 92 Mich., 186 (16 L. R. A., 247).

In *Willford* v. *Heimhoffer et al,* 2 C. C.—N. S., 369, it is held:

"A doweress has the same rights in oil wells sunk upon the lands of her husband after his death that she has in wells sunk before his death; and where the rents and profits of a tract of land are assigned to her, oil production from that land is clearly hers."

We conclude, upon a review of the authorities upon the question, that the widow is clearly entitled to the royalties now in the hands of the executors. They are no part of the assets of the estate of Adam G. Breece. The gas company should have paid them directly to the widow instead of to the executors, and not being assets of the estate, does not make a case for a direction of the court as to how the money shall be disposed of by the executors, and for that reason the petition of the plaintiffs is dismissed at their costs.